H. EGGERS and others *vs.* NATIONAL BANK OF COMMERCE, impleaded, etc.

February 20, 1889.

Grain-Warehouse Act—Receipts for Grain Pledged.—Under the grain-warehouse law of 1876 no distinction can be made between the person who makes an actual delivery of his grain at a public warehouse and a pledgee of the grain of the warehouseman, (actually upon deposit in the warehouse,) who leaves it in store with the proprietor as his bailee, taking a warehouse receipt therefor. Following the rules laid down in *Nat. Exchange Bank* v. *Wilder*, 34 Minn. 149.

Appeal by the defendant bank, impleaded with Moses P. Hayes, assignee in insolvency of W. F. Meader & Co., from an order of the district court for Hennepin county, *Hicks*, J., presiding, refusing a new trial. The action was brought to establish the right of plaintiffs to the proceeds of the car-load of wheat, mentioned in the opinion, which had come into the assignee's hands.

*L. J. C. Drennen* and *Jackson, Atwater & Hill*, for appellant.

*S. M. Finch* and *E. T. Smith*, for respondents.

COLLINS, J.[1] For some years prior to June 19, 1886, Meader & Co. were operating a warehouse at Waconia, receiving and storing grain for the public, and also engaged in buying and storing grain in said warehouse on their own account. On that day they had on hand, collectively stored in the customary and well-known manner in such warehouses, nearly 7,000 bushels of their own wheat, and 650 bushels which had been deposited by other persons for storage. The same day they issued to the appellant (defendant) a storage ticket or receipt for 5,000 bushels of wheat as security for an indebtedness then incurred. Meader & Co. thereafter continued to do business by receiving and storing the wheat of others in mass with wheat purchased by themselves, and shipping it out, as occasion required, until their assignment, soon after March 12, 1887.

It is palpable that none of the wheat upon hand when appellant

[1] Vanderburgh, J., took no part in this case.

received its ticket or receipt remained later than September 2, 1886, for on that day the warehouse was cleared of old grain. There was then, however, nearly 3,000 bushels of new wheat belonging to Meader & Co., and the deposit steadily increased until February 10th, when the amount exceeded 6,000 bushels, most of which also belonged to them. From that day it decreased gradually, there being on March 8th almost 2,500. Between October 19, 1886, and March 12th following, the plaintiffs, who were farmers, deposited for storage, receiving the usual tickets therefor, 533 bushels of wheat. On the last-named day Meader & Co. cleaned the warehouse by shipping to Minneapolis a car-load, 531 bushels; but, as it did not arrive until after their assignment, it fell into the hands of the assignee in bankruptcy.

Plaintiffs claim the right to recover the wheat, or its value, by virtue of the deposit tickets issued to them as they stored their grain; while the appellant asserts its right to participate in the wheat, or its proceeds if sold, as the owner and holder of the ticket or receipt issued June 19, 1886. The grade of the wheat is not in controversy. That part of the warehouse law of 1876,—found in Gen. St. 1878, *c.* 124,—bearing upon this case has been construed in *Nat. Exchange Bank* v. *Wilder*, 34 Minn. 149, (24 N. W. Rep. 699.) In that case, which controls this, it was held, modifying what had been stated (unnecessarily for its determination) in *Fishback* v. *Van Dusen*, 33 Minn. 111, (22 N. W. Rep. 244,) that the statute embraced and included as depositors all who owned or held grain actually in store, whether deposited by themselves or by others to whose rights they have succeeded, and that no distinction can be made between the person who makes an actual physical delivery of his grain at the warehouse and the pledgee of the grain of a warehouseman—actually on deposit in his warehouse—who leaves it in store with the proprietor as his bailee, taking a warehouse receipt therefor, and that in either event the parties have grain on deposit with the warehouseman.

In the case at bar there was at the time of the pledge much more grain actually in store, the property of Meader & Co., than was needed to meet and redeem the storage receipt issued to appellant. Had it then been presented the required amount would have been delivered. Had appellant then returned the wheat to the custody of

the warehouseman, taking a ticket or receipt, we see no reason why we should not have an actual depositor of the precise kind respondents' counsel insist should alone be recognized in the distribution of the wheat in question or its proceeds. It cannot be successfully urged that the scant formality of weighing a quantity of wheat out of a warehouse and then weighing it back again is essential to the protection of those who, following a well-established custom, loan money on this form of security. All of the receipt-holders mentioned in the pleadings are entitled to participate. See *Dows* v. *Ekstrone*, 1 McCrary, 434.

Order reversed, and case remanded for proceedings in consonance with the views herein expressed.