JOINT STOCK COMPANY OF VOLGAKAMA OIL AND CHEMICAL FACTORY, Respondent, *v.* THE NATIONAL CITY BANK OF NEW YORK, Appellant.

**Banks and banking — motion for summary judgment — action by Russian corporation to recover moneys deposited with defendant — defense that plaintiff's corporate existence had been terminated — plaintiff entitled to its property if it still exists as corporation — insufficiency of decrees of Soviet government to show intent to terminate corporate existence — intent should appear by express words or necessary implication — allegation in answer that plaintiff is not a corporation may be made on information and belief.**

1. Where, in an action to recover the balance of a deposit in the defendant bank by the plaintiff, which at the time of making the deposit was recognized as a Russian corporation by defendant, the defense is that the plaintiff's corporate existence has been terminated

by a decree or decrees of the Russian government, unless the alleged decrees show that the plaintiff has ceased to exist as a corporation in the land of its creation the answer is insufficient and defendant must pay back the deposit according to its agreement.

2. Irrespective of what has happened to the plaintiff's property or to its method and means of conducting business, if it be a fact that it still exists as a corporation, *it is entitled to its property, and may maintain this action.* All decrees in the forms of penalties will have no extraterritorial effect.

3. Upon examination of the alleged decrees, as set forth in an affidavit of an employee of defendant, it must be held that it does not appear that they terminate the plaintiff's existence for all purposes or take from it the power to maintain this action. While it may be assumed that plaintiff came within certain decrees of nationalization, there is nothing to show that " nationalization " terminated the plaintiff's corporate existence, or that all its rights to exist in some form had ceased. Intent to terminate corporate existence should appear by express words or by necessary implication and it does not so appear from the language of the decrees upon which the defendant relies.

4. Rule 93 of the Rules of Civil Practice, providing that there must be a specific allegation that the party is not a corporation, is to be read with section 276 of the Civil Practice Act, and the special allegation, like any other allegation, may be made on information and belief. It was, therefore, error to hold the answer insufficient to raise the question of the plaintiff's corporate capacity because it alleged non-existence on information and belief instead of upon knowledge. Where, however, on a motion for summary judgment, under rule 113, it appears that all the information which the defendant has shows that its denial is not justified and that the corporation does exist as a fact, judgment may be given as therein provided.

*Joint Stock Co.* v. *National City Bank*, 210 App. Div. 665, affirmed.

(Argued May 5, 1925, decided July 15, 1925.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department entered December 1, 1924, unanimously affirming a judgment in favor of plaintiff entered upon an order of Special Term granting a motion to strike out the answer of the defendant and for summary judgment in favor of plaintiff.

*Carl A. Mead* and *John A. Garver* for appellant. The plaintiff's corporate existence was put in issue by the

24

answer, under rule 93 of the Rules of Civil Practice. (*East River Bank* v. *Rogers*, 7 Bosw. 493; *First Nat. Bank* v. *Slattery*, 4 App. Div. 421; *Bengston* v. *Thingvalla S. S. Co.*, 3 Civ. Pro. Rep. 263; 31 Hun, 96; *Dahlstrom* v. *Gemunder*, 198 N. Y. 444; *Hanley* v. *Plant,* 210 N. Y. 405; *S. M. E. Church* v. *Humphrey*, 21 N. Y. Supp. 89; *Dolge* v. *C. C. Ins. Co.*, 211 App. Div. 112; *Bennett* v. *Leeds Mfg. Co.*, 110 N. Y. 150; *Howe* v. *Elwell*, 57 App. Div. 357; *Rockowitz* v. *Siegel*, 151 App. Div. 636; *Lazarus* v. *Wiernicki*, 195 App. Div. 830; *Michigan Ins. Bank* v. *Eldred*, 143 U. S. 293.) The moving papers were sufficient. (*Crowns* v. *Vail*, 51 Hun, 204; *Manufacturers' Nat. Bank* v. *Hall*, 60 Hun, 466; *Hoorman* v. *Climax Cycle Co.*, 9 App. Div. 579; *Parker* v. *Wallace & Co.*, 206 App. Div. 465; *Daimber Co.* v. *Cont. T. & R. Co.*, 1916, 2 App. Cas. 307.) The defendant proved facts sufficient to entitle it to defend. (*Dwan* v. *Massarine*, 199 App. Div. 879.)

*Morris Hillquit* for respondent. The answer does not put in issue the plaintiff's corporate existence. (*E. R. Bank* v. *Rogers*, 20 N. Y. Super. Ct. 493; *First Nat. Bank* v. *Slattery*, 4 App. Div. 421; *L. C. Stor. Service Co.* v. *Conyngham*, 32 N. Y. Supp. 129; *Stoddard Mfg. Co.* v. *Mattice*, 10 S. D. 253; *Bd. of Education* v. *Prior*, 11 S. D. 292; *Bengston* v. *Thingvalla S. S. Co.*, 3 Civ. Pro. Rep. 263; 31 Hun, 96.)

CRANE, J. Pursuant to rules 104 and 113 of the Rules of Civil Practice, the plaintiff made a motion for an order striking out the answer of the defendant herein, and directing judgment for the plaintiff upon the ground that the answer was sham and frivolous, and that there was no defense to the action. The appeal to this court, by permission, is from a summary judgment entered upon said motion in favor of the plaintiff, unanimously affirmed by the Appellate Division.

The complaint in substance alleges that the plaintiff

is a corporation doing business prior to June 12, 1918, in Russia and in Poland; that on said day plaintiff caused to be delivered to the defendant $20,000 for its credit which the defendant received as a deposit and agreed to repay to · the plaintiff or its order on demand.   On the 21st day of June, 1918, plaintiff likewise caused to be delivered to the defendant the sum of $5,000 which the defendant also agreed to repay on demand with interest.   Twenty thousand dollars having been repaid, the complaint demands judgment for the balance, the defendant having failed and refused to repay the same, as agreed.

The answer denies the incorporation of the plaintiff and alleges on information and belief that it is not and has not been since 1918 a corporation.   For a separate defense the answer alleged the following: " The defendant alleges on information and belief:

" XII. About the year 1918 the corporate existence of the company, to the credit of which the deposits referred to herein were made, was terminated by a decree or decrees of the Government of Russia, or otherwise."

The affidavits accompanying this motion on both sides revealed the following facts:   The deposit made with the defendant was of moneys in this country, the deposit having been made at the banking house of the defendant in the city of New York on June 12, 1918, and June 21, 1918.   It was made in the name of the plaintiff, a Russian corporation, upon the express agreement that payment would be made upon a power of attorney to be signed by certain specified and named directors of the company whose signatures were filed with the defendant. These directors were Woulf Posnjak and S. Trepel, both managing directors of the Joint Stock Company of Volgakama Oil and Chemical Factory.   The bank had the signatures of these directors on file, the genuineness of which is not disputed.   The bank agreed to repay the money received by it upon demand made by these two directors.   Demand was made for the deposit or the

balance of the deposit in accordance with this agreement, as a power of attorney, the original of which is with the defendant, was signed by these directors and the signatures correspond with the signatures on file. The defendant makes no claim or suggestion that the individuals demanding the money are other than those depositing the money and to whom it had agreed to repay the money at their request.

In March of 1917 the first revolution took place in Russia as a result of which the former Czarist government was deposed, and the Provisional government of Russia established. In the month of November, 1917, a counter-revolution, fostered by the Bolsheviki party took place which deposed the Provisional Russian government of Russia, and established the Russian Socialist Federated Soviet Republic, generally known as the Soviet government.

Therefore, it will be noted that when these deposits were made in behalf of the plaintiff, the Soviet government had been in existence about seven months, and that in taking the deposits and making the agreement, the defendant recognized the plaintiff as a corporation whose money it could take in the course of ordinary business transactions.

The defendant sought to substantiate its allegation that the plaintiff had ceased to exist as a corporation by setting forth in affidavit form the facts upon which it based its information. The affidavit was made by an employee of the National City Bank, at one time a resident in Petrograd, sub-manager of the defendant's branch in that city. He states that he read in the Russian papers that the Soviet government had enacted certain decrees. There are seven which he refers to according to which the defendant states and alleges that the Soviet government has put an end to the plaintiff's existence as a corporation, and that, therefore, the plaintiff or its authorized agents are not legally entitled to the deposits. These seven decrees are alleged to be the following:

1. November 7, 1917. "All private ownership of land is abolished immediately without any indemnification."

2. November 8, 1917. "All the underground depths: the ore, naphtha, coal, salt, etc., and also the forests and waters, having a general importance, shall pass over into the exclusive use of the State."

3. November 27, 1917. " In the interests of a well-planned regulation of the national economy in all industrial, commercial, banking, agricultural, forwarding, co-operative, and productive associations and other enterprises working with hired workmen or distributing work outside, a workmen's control is now being introduced over the production, purchase, sale of products and raw materials, their storage, and also over the financial side of the enterprise."

4. September 14, 1918. " The prohibition for private individuals, concerns and institutions, as well as for government institutions to effect any settlement whatsoever abroad, even though the agreements were contracted before the hostilities, without special authorization of the said Chancellery remains in force. Any case of payment or transfer without special permit therefor will be severely punished."

5. June 28, 1918, it is said a decree was published nationalizing sundry industries as follows: "All concerns of joint stock companies or corporations possessing plants and factories of artificial fats, soap and stearine factories with a capital stock of no less than one million roubles according to the data for 1914 or possessing tallow boileries and oil mills, with a capital stock of no less than 500,000 roubles according to the data for 1914."

6. June 28, 1918. The Soviet government issued an order providing that all shares, bonds and securities which might be in possession of Russian or foreign private holders, etc., a list of which had not been produced to the branches of the Peoples' Bank of the Russian government were deemed annulled.

7. November 29, 1920. A decree was published which provided: "All industrial enterprises in the possession of private persons or companies having more than five workmen where mechanical motive power is employed, or ten without mechanical motive power, are declared nationalized."

These are all the facts and allegations connected with this motion for summary judgment which are necessary to be stated for the purposes of this opinion.

The defendant, in its answer, upon information, denied that the plaintiff was a corporation, and alleged that it had ceased to exist by reason of the decrees of the Russian government or otherwise. It has stated in its affidavits its complete information which deals exclusively with the action of the Soviet government. The word " otherwise," therefore, in its answer is meaningless.

Unless these alleged decrees, as stated by the defendant, show that the plaintiff has ceased to exist as a corporation in the land of its creation, the defendant's answer is insufficient and it must pay back the deposit according to its agreement. No matter what has happened to the plaintiff's property or to its method and means of conducting business, if it be a fact that it still exists as a corporation, it is entitled to its property, and may maintain this action. All decrees in the forms of penalties will have no extraterritorial effect.

As to the first three decrees alleged to have been passed or enacted in 1917, they are insufficient for two reasons: *First*, they have nothing whatever to do with the existence of the plaintiff as a corporation; *second*, they were in force and effect in June of 1918, when the defendant took the plaintiff's property recognizing it as a corporation and agreeing to pay it back on demand. The defendant is, therefore, estopped from denying the plaintiff's corporate existence at the time of the deposit. ( *U. S. Vinegar Co. v. Schlegel*, 143 N. Y. 537; *Whitford* v. *Laidler*, 94 N. Y. 145; *Close* v. *Glenwood Cemetery*, 107 U. S. 466; *Russian*

*Commercial & Industrial Bank* v. *Comptoir D'Escompte De Mullhouse,* [House of Lords] 40 Times L. Rep. 837.)

As to the decrees in 1918 after the deposit.— The decree of September 14, 1918 (No. 4 above), can have no effect upon the plaintiff's existence, as it attempts to severely punish settlements made abroad. It has no effect outside of Russia. The decree of June 28, 1918 (No. 6 above), annuls all shares, bonds and securities ·of Russian or private holders, a list of which has not been produced to the branches of the Peoples' Bank of the Russian government. In the first place, the deposit in New York city is neither a share of stock, a bond, or a security; and in the second place, the Soviet government by its decree cannot cancel and annul foreign obligations. In fact, the defendant does not claim here that the Russian government has satisfied or annulled its debt; it merely pleads the non-existence of the plaintiff; in the third place, it is only such securities as are non-listed which are annulled, and there is no allegation or claim · that the bank deposit is not among these. However this may be, this decree does not affect the plaintiff's corporate capacity. As to No. 5 and No. 7 (above), the decrees of June 28, 1918, and of November 29, 1920, it is claimed that these decrees have nationalized the plaintiff. Technically, it may be said that there is nothing in the record to show that the plaintiff manufactures soap, with a capital stock of no less than one million roubles, or possesses oil mills having a capital stock of no less than 500,000 roubles according to the data for 1914. Further, that there is nothing to show that the plaintiff at the times herein mentioned had in Russia more than five · workmen where mechanical motive power was employed or ten workmen employed where there was no mechanical motive power. Passing these technical objections, however, and assuming that the plaintiff corporation came within these decrees, there is nothing to show that " nationalization " terminated the plaintiff's corporate

existence, or that all its rights to exist in some form had ceased.

Intent to terminate corporate existence should appear by express words or by necessary implication. It does not so appear from the language of the decrees upon which the plaintiff relies. In *Russian Commercial & Industrial Bank* v. *Comptoir D' Escompte De Mullhouse* (*supra*) the House of Lords seized upon surrounding circumstances as a basis for an inference that intent to terminate was not present though the decree not only nationalized banking but merged existing banks in the State bank. We need not go so far. The decrees before us are entirely consistent with the view that corporate form should be preserved though ownership of capital and right of direction might be changed. And at this point it may be well to note what Lord CAVE had to say in his opinion, as it strengthens somewhat the plaintiff's position here. " Indeed, counsel for the defendants deliberately refrained from arguing the question whether a Russian decree could confiscate foreign bonds which were in this country; and it is, therefore, unnecessary to deal with this question. But it is desirable to add that neither the Russian State Bank nor the Russian government has (so far as the evidence shows) made any claim whatever to the bonds in dispute or otherwise intervened in any way; and this being so, it is not open to the defendants, who received the bonds from the plaintiff bank, to set up an adverse claim as existing in a third person except on behalf of and by the authority of that person."

While it may be said in answer to this quotation that the Soviet republic could make no claim to these moneys under our decision in *Russian Soc. F. S. Republic* v. *Cibrario* (235 N. Y. 255), yet it is interesting to note how far the courts of a country which has recognized the existence of the Soviet republic have gone to uphold agreements made to give back bonds or money, and to find the continuing existence of a corporation, defunct

for all practical purposes, in order that such agreements may be enforced. Public policy both here and in England demands that contracts be fulfilled.

In my judgment therefore, the defendant has failed to allege any information or facts showing that the plaintiff corporation has ceased to exist as a corporation, and that it cannot maintain this suit. Its allegation, that the plaintiff was not a corporation, and has ceased to exist, even if it be sufficient as a pleading, is insufficient when all the information which it has and which it sets forth in the papers does not reach the point of showing the plaintiff's dissolution as a corporation or non-existence as a legal entity.

If the appellant's contention were correct and the facts appear that the Soviet government had actually and effectually terminated the plaintiff's corporate existence so that for all purposes it had ceased to be a corporation in the place of its creation, yet I personally would be of the opinion that the courts of this country and of this State should not recognize in an action at law such as this, the Soviet decrees. (*James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *Sokoloff* v. *National City Bank*, 239 N. Y. 158; *Wulfsohn* v. *Russian Socialist Federated Soviet Republic*, 234 N. Y. 372; *Russian Socialist Federated Soviet Republic* v. *Cibrario*, 235 N. Y. 255; 25 Columbia Law Rev. 544, 565; *Gibbs* v. *Société Industrielle des Métaux*, 25 Q. B. D. 399.) The majority of the court, however, are of the opinion that the affidavits in this case do not present the question, and that it does not appear that the decrees relied upon and quoted in the affidavits terminate the plaintiff's corporate existence for all purposes or take from it the power to maintain this action.

We conclude, therefore, that the determination of the Appellate Division and the Special Term was right in giving judgment for the plaintiff in this case.

We cannot, however, agree with what appears to be the principal reason assigned by the Appellate Division for its conclusion. The answer was held to be insufficient to

raise the question of the plaintiff's corporate capacity because it alleged non-existence on information and belief instead of upon knowledge. Whatever may have been the ruling in the early cases we feel that in this day when pleadings are more liberally construed, such a technical holding is unnecessary, and neither within the letter nor the meaning of our Civil Practice Act and the rules connected with it.

Section 276 of the Civil Practice Act reads as follows: " The allegations or denials in a verified pleading must, in form, be stated to be made by the party pleading. Unless they are therein stated to be made upon the information and belief of the party, they must be regarded for all purposes, including a criminal prosecution, as having been made upon the knowledge of the person verifying the pleading." This, of course, refers to all allegations in a pleading. Rule 93 of the Rules of Civil Practice refers to a certain class of allegations in a pleading; to those allegations regarding corporate existence. It reads: " 1. In an action by or against a corporation, the complaint *shall state* that *a* plaintiff or defendant, as the case may be, is a corporation, whether domestic or foreign, and if the latter, the state, country or government by or under whose laws it was created.

" 2. In *such* an action, the plaintiff need not prove, upon the trial, the existence of the corporation, unless the answer is verified and contains a *specific* allegation that the plaintiff, or the defendant, as the case may be, is not a corporation."

Under this rule a denial of corporate existence is insufficient. There must be a specific allegation that the party is not a corporation. This rule, however, is to be read in connection with section 276 of the Civil Practice Act, and the special allegation, like any other allegation, may be made on information and belief. How else could a defendant in a case like this deny the non-existence of the plaintiff as a corporation except on information and

belief?   Certified copies of a decree of the Soviet republic
would be merely information as to an act of that republic
which might not amount to a dissolution of the corpora-
tion.   The allegation must be made on information.   The
answer, therefore, in our judgment, was a compliance with
rule 93 of the Rules of Civil Practice.   We hold, however,
as above stated, that when on a motion for summary
judgment, under rule 113, it appears that all the informa-
tion which the defendant has shows that its denial is not
justified, and that the corporation does exist as a fact,
judgment may be given as therein provided.

For the reasons here stated, the judgment appealed
from must be affirmed, with costs.

HISCOCK, Ch. J., ANDREWS and LEHMAN, JJ., concur;
CARDOZO and MCLAUGHLIN, JJ., concur in result; POUND,
J., absent.

Judgment affirmed.