## WULFSOHN et al. v. RUSSO–ASIATIC BANK.

(Circuit Court of Appeals, Ninth Circuit. March 22, 1926. Rehearing Denied April 30, 1926.)

### No. 4343.

**1. Appeal and error ⬅⬆219(2)—In absence of request for court to find facts specially, or to find generally for plaintiffs in error, and exception to ruling thereon, exception to general finding presents no question for review.**

In absence of request for court to find facts specially, or to find generally for plaintiffs in error, and exception to court's ruling thereon, general finding of court stands as verdict of a jury, and exception thereto presents no question for review.

**2. Limitation of actions ⬅⬆182(2)—Statute of limitations, not pleaded to cause of action set forth in amended petition, held not available as defense.**

Statute of limitations, not pleaded in any form to cause of action set forth in amended petition, held not available as defense to action by Russian banking corporation against partnership in United States Court for China.

**3. Appeal and error ⬅⬆840(4).**

No ruling of court on original petition, whether made before or after filing of amendment complete in itself, can be assigned as error.

**4. Limitation of actions ⬅⬆24(1).**

Two-year statute of limitations held not bar to action on written contracts by Russian banking corporation against partnership in United States Court for China.

**5. Ambassadors and consuls ⬅⬆6—Action by Russian corporation against partners, citizens of United States, on contracts made and breached in China, held within jurisdiction of United States Court for China.**

Action by Russian banking corporation against partners, citizens of United States, on contracts made in China, to be there performed in part, at least, and breached there, held within jurisdiction of United States Court for China, though no treaty existed between United States and Russia, jurisdiction of territorial courts being dependent only on nationality of defendant.

**6. Ambassadors and consuls ⬅⬆6—Russian government's impounding defendants' books and papers, and refusal to permit necessary witness to leave Russia or give evidence, held not grounds for dismissing action by Russian corporation in United States Court for China.**

That books and papers belonging to defendants material to their defense had been impounded by Russian government, and defendants denied access thereto, and that material and necessary witness was not permitted by Russian government to leave Russia, or give evidence at trial, held not grounds for dismissal of action by Russian banking corporation in United States Court for China.

**7. Ambassadors and consuls ⬅⬆6—Alleged illegality of contracts sued on by Russian corporation in United States Court for China held not ground for dismissing action.**

That contracts sued upon by Russian corporation in United States Court for China are illegal according to Russian law is not ground for dismissing action on motion, but relates to merits.

**8. Appeal and error ⬅⬆185(1).**

Where court's jurisdiction is not questioned in trial court, only jurisdictional question before appellate court is such as may appear from face of record.

**9. Corporations ⬅⬆659—Defendants, contracting with Russian corporation after its nationalization by decrees of Soviet government, held estopped to question corporation's capacity to sue on such contract.**

Partnership, which made contracts with Russian corporation after its nationalization by decrees of Soviet government of Russia, held estopped to question plaintiff's capacity by reason of such decrees to maintain suit on such contracts.

**10. Judgment ⬅⬆223—Judgment for amount sued for, with interest from delivery dates fixed in contracts, held sufficiently certain.**

Judgment in action on contract in United States Court for China, awarding plaintiff sum sued for, "with interest on the various items thereof from the dates of delivery fixed by the respective contracts," held sufficiently certain; exact amount of recovery being mere matter of computation.

**11. Judgment ⬅⬆223.**

Judgment should be definite and certain, and ordinarily interest should be computed up to date of judgment and embodied therein.

**12. Appeal and error ⬅⬆977(5).**

Motions for new trial are addressed to sound discretion of court, and orders denying them are not reviewable on writ of error, in absence of plain abuse of discretion.

**13. New trial ⬅⬆99.**

Alleged newly discovered evidence, which would not change result, and which is only in part newly discovered, is not ground for new trial.

In Error to the United States Court for China; Charles S. Lobingier, Judge.

Action by the Russo-Asiatic Bank against Max Wulfsohn and Samuel Bonis, copartners trading under the name of Wax Wulfsohn & Co. Judgment for plaintiff, and defendants bring error. Affirmed.

Frank E. Hinckley, of San Francisco, Cal., Max Radin, of Berkeley, Cal., and Richard T. Evans, of Tientsin, China (Otto C. Sommerich and Edwin M. Borchard, both of New York, of counsel), for plaintiffs in error.

Chickering & Gregory, of San Francisco, Cal., for defendant in error.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

RUDKIN, Circuit Judge. This is a writ of error to review a judgment of the United States Court for China. The case was heard on an amended petition, answer, and reply. The amended petition alleges, in substance, that the plaintiff is a banking corporation organized under the laws of Russia, with offices in Shanghai, Harbin, and other places in China and elsewhere; that the defendants are copartners having a place of business in New York City, and maintaining an agent in Harbin and elsewhere in China, within the jurisdiction of the United States Court for China; that during the years 1919 and 1920 the plaintiff bought from the defendants, and the defendants sold to the plaintiff, the sum of gold $160,000, for which the plaintiff agreed to deliver to defendants roubles, as more particularly set forth in those certain exchange contracts attached to and made a part of the amended petition; that the plaintiff has performed its part of the contract; that the defendants have failed, neglected, and refused to perform their part; and that there is now due and owing from the defendants to the plaintiff the sum of gold $160,000.

The answer denies on information and belief that the plaintiff is a banking corporation organized under the laws of Russia as alleged, and denies on like information and belief that the persons bringing the action are the Russo-Asiatic Bank, to which the defendants gave the instruments which form the basis of the amended petition herein, or their successors in law; admits that the defendants are copartners, with a place of business and agency as alleged; admits the execution and delivery of the instruments attached to the amended petition; and denies each and every other allegation thereof. By way of special defense the answer avers that the transaction set forth in the amended petition was part of a series of transactions of exchange, and that gold dollars of the full value of all roubles received have been delivered to the plaintiff in New York. The reply denied the affirmative matter in the answer.

Thereafter, and before the trial, the defendants below interposed a motion to dismiss for the following reasons: (1) That books and papers belonging to the defendants and material to their defense have been impounded by the de facto Russian government, and the defendants have been denied access thereto; (2) that a certain material and necessary witness for the defendants is not permitted by the Russian government to leave Russia, or to give evidence at the trial; (3) that the plaintiff, according to its amended petition, is a Russian corporation, and as such is an instrumentality of the Russian government; (4) that the Russian government has not been recognized by the United States of America, and may not sue in an American court; (5) that the right of an alien to sue in our courts is a matter of comity, not of right, and in this case the privilege should be denied; (6) that the contracts set forth in the amended petition are illegal according to Russian law.

[1] The motion to dismiss was denied, and the case went to trial. After the close of the trial the court delivered its opinion in writing and gave judgment for the plaintiff below. Numerous errors have been assigned, and many questions of public and private law have been discussed in the briefs of counsel for plaintiffs in error; but many of the errors thus assigned are not open to review on the record brought here, because no request was made to the court at the close of the trial to find the facts specially, or to find generally, for the plaintiffs in error. In the absence of any such request, and a ruling thereon and an exception thereto, the general finding of the court stands as the verdict of a jury, and an exception thereto presents no question for review.

This rule has been so often affirmed by this court that it is deemed scarcely necessary to refer to the authorities. However, see China Press v. Webb (C. C. A.) 7 F.(2d) 581, where the rule is held applicable to writs of error to the United States Court for China, and the cases there cited. The only questions subject to review, therefore, are rulings made during the progress of the trial, to which exceptions were reserved, and errors apparent from an inspection of the pleadings, process, and judgment.

[2] Among other contentions made is that the statute of limitations is a bar to the action. It is perhaps a sufficient answer to

this to say that the statute was not pleaded as a defense to the cause of action set forth in the amended petition. The original petition was filed December 19, 1922. This was general in its terms and made no reference to any written contracts. January 16, 1923, a demurrer to the petition was interposed on the ground that the action was not commenced within the time required by regulation 83 for the United States Consular Courts in China. April 10, 1923, an amended petition was filed, based on the written contracts, and copies of those contracts were attached as exhibits. April 21, 1923, the court filed an opinion overruling the demurrer to the petition. It would thus appear that the record is somewhat inconsistent on its face.

[3] The amended petition, complete in itself, superseded the original petition for all purposes, and no ruling of the court on the original petition, whether made before or after the amendment can be assigned as error. "An amended complaint, which is complete in itself, and which does not refer to or adopt the original complaint as a part of it, entirely supersedes its predecessor, and becomes the sole statement of the cause of action. The original complaint becomes functus officio from the date of the filing of its successor." United States v. Gentry, 119 F. 70, 75, 55 C. C. A. 658, 663.

From the mere filing of the amended petition it might be inferred that counsel for the petitioner were of opinion that the plea of the statute of limitations to the original petition was well taken, and from a failure to plead the statute of limitations to the amended petition it might be inferred that the defendants abandoned the claim that the action was barred by the statute of limitations, because of the written contracts. The opinion of the court on the demurrer refers to the exchange orders or written contracts which were made a part of the amended petition only, and it might be inferred from this that the court treated the demurrer on file as if interposed to the amended petition.

But these are matters of conjecture only, and the fact remains that the statute of limitations was not pleaded in any form to the cause of action set forth in the amended petition. In the absence of such a plea there is nothing before us for review. "The statute of limitations ordinarily does not operate by its own force as a bar, but as a defense to be pleaded by the party invoking the benefit of its protection, and therefore, as a general rule, in order that defendant may avail himself of the bar of the statute as a defense at the trial, whether in a suit in equity, or in an action at law or under the codes, he must by some appropriate pleading, such as by demurrer, where that form of pleading is available, or by plea or answer, affirmatively plead the statute. If the statute is not pleaded in a proper time and manner, it is deemed to be waived, and cannot be set up as a defense at the trial." 37 C. J. 1213.

[4] But, in any event, it would seem that there is no substantial merit in the defense. If there was any cause of action in favor of the plaintiff below, it was based on written contracts which are not subject to the two-year statute of limitation. The court below found that such contracts existed, and with that finding we are in full accord.

[5-7] Counsel for the plaintiffs in error challenge the jurisdiction of the court below, but are again confronted with the objection that no such question was raised in that court. It was not raised by demurrer or answer, nor was it raised by the motion to dismiss, the grounds of which have already been stated. The first two grounds of that motion might be urged in support of an application for a continuance, but they afford no possible basis for a dismissal of the action; the last ground relates entirely to the merits, and the three remaining grounds challenge the capacity of the plaintiff to sue, rather than the jurisdiction of the court to entertain the suit. If the question is before us at all, therefore, it must be because it appears on the face of the record.

[8] The plaintiff was a Russian corporation; the defendants were citizens of the United States. The contracts involved in the suit were made in China, were breached in China, and were to be performed in China, in part at least. The case would therefore clearly appear to be within the jurisdiction of the United States Court for China, unless there is merit in the claim that a Russian corporation cannot maintain a suit in that court, because of the absence of any treaty between this country and Russia. But the jurisdiction of that court is conferred by act of Congress, and is not dependent upon treaties between this and other countries, save the treaty with China alone.

No doubt, the jurisdiction over citizens and subjects of Russia might be taken away by treaty with that country; but, in the absence of any such treaty provision, every alien has access to that court where the defendants are American citizens. "The test of jurisdiction over the person in all these territorial courts is the nationality of defendant. Any one may be a plaintiff, but there must be a defendant subject to American au-

thority in order to confer jurisdiction." 25 C. J. 324.

[9] The plaintiffs in error further contend that the Russo-Asiatic Bank was nationalized by certain decrees of the Soviet government of Russia, that from and after the date of such decrees the corporation was dissolved, and that it has no legal capacity to sue. If the decrees in question had followed rather than preceded the transactions which gave rise to the present controversy between the plaintiffs in error and the defendant in error, an interesting question would be presented. But, whether the bank was dissolved or not, the fact remains that it continued to function and transact business, in defiance of the decrees of the Soviet government, and the plaintiffs in error dealt with it and received moneys from it as an existing entity. Under such circumstances, we think that they are clearly estopped to question either the corporate existence of the bank, or its right to maintain an action to recover moneys due it. As said by the Court of Appeals of New York in Joint-Stock Co. v. National City Bank, 148 N. E. 552, 240 N. Y. 368:

"As to the first three decrees, alleged to have been passed or enacted in 1917, they are insufficient for two reasons: First, they have nothing whatever to do with the existence of the plaintiff as a corporation; second, they were in force and effect in June of 1918, when the defendant took the plaintiff's property recognizing it as a corporation and agreeing to pay it back on demand. The defendant is therefore estopped from denying the plaintiff's corporate existence at the time of the deposit."

"In the absence of fraud and subject to other qualifications which will be referred to hereinafter, it may be laid down as the general rule that a person who has contracted or otherwise dealt with an association in such a way as to recognize and in effect admit its legal existence as a corporate body is thereby estopped to deny its corporate existence in any action arising out of or involving such contract or dealing, unless its existence is attacked for causes which have arisen since the making of the contract or other dealing relied on as an estoppel." 14 C. J. 227. See, also, Wilder Mfg. Co. v. Corn Products Co., 35 S. Ct. 398, 236 U. S. 165, 59 L. Ed. 520, Ann. Cas. 1916A, 118.

[10, 11] Again, it is contended that the judgment contains reversible error within itself. The judgment follows the opinion of the court, as seems to be the practice in that jurisdiction, and is somewhat informal. Nevertheless it awards judgment in favor of the plaintiff and against the defendants for the sum of $160,000, "United States currency, with interest on the various items thereof from the dates of delivery fixed by the respective contracts, and costs." A judgment should be definite and certain, and ordinarily interest should be computed up to the date of the judgment and embodied therein. But the rate of interest is a matter of law, and the dates of the different deliveries appear on the several contracts attached to the amended petition. The amount of the judgment is therefore a mere matter of computation, and, under the rule that that is certain which may be made certain, the judgment is sufficient.

[12, 13] Error is assigned in the denial of a motion for a new trial. Such motions are addressed to the sound discretion of the court, and orders denying them are not subject to review on writ of error, in the absence of a plain abuse of discretion. Here the motion was based on the ground of newly discovered evidence, and was properly denied for two reasons: First, the newly discovered evidence would not change the result; and, second, in large part, the evidence was not newly discovered at all.

This disposes of the principal assignments of error. Many other questions are discussed in the voluminous briefs on file, but they call for no special consideration. We have examined all of them, and, finding no error in the record, the judgment is affirmed.