## REIVICH v. UNITED STATES et al.

Circuit Court of Appeals, Sixth Circuit.
April 3, 1928.

No. 4898.

1. Army and navy ⟨⚏⟩51½—Sole legatee under prior will held "designated beneficiary" in testator's war risk insurance policy payable to himself (War Risk Insurance Act, § 402 [Comp. St. § 514uuu]).

Where soldier, taking policy of war risk insurance, named himself as beneficiary, and by will made before application for policy had made grandmother sole legatee, grandmother *held* to be "designated beneficiary," under War Risk Insurance Act, § 402 (Comp. St. § 514uuu), in view of prior adjudication, which has not been doubted, and which bureau has followed.

2. Army and navy ⟨⚏⟩51½—On death of designated beneficiary in war risk insurance policy, beneficiary's estate is entitled to payments accruing before death (War Risk Insurance Act, § 402 [Comp. St. § 514uuu]; 38 USCA § 514).

Where designated beneficiary in war risk insurance policy, within War Risk Insurance Act, § 402 (Comp. St. § 514uuu), died before all payments had been made, insured's estate *held* entitled, under Act March 4, 1925, § 14 (38 USCA § 514), superseding Act June 7, 1924, tit. 3, § 303 (43 Stat. 607), to future payments which had not accrued to designated beneficiary before her death, but beneficiary's administrator was entitled to recover amount of payments accruing before her death, which had been paid to soldier's brother in view of Act Dec. 24, 1919, § 15 (Comp. St. § 514vv[1]).

3. Army and navy ⟨⚏⟩51½—Where soldier's administrator was brother, who had received insurance payments due beneficiary, such payments may be set off against recovery, after beneficiary's death, of future payments.

Where designated beneficiary under war risk insurance policy died without receiving payments, which had been paid to soldier's brother, and such brother was administrator of soldier's estate, suing government and beneficiary's administrator to recover future payments payable to insured's estate after death of designated beneficiary, it was not error to set off against his recovery amount of payments he had received, which should have been paid to beneficiary, since, as administrator of estate, he was trustee for himself.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by Alex Reivich, administrator, against the United States and another. From an adverse decree, plaintiff appeals. Affirmed.

Francis J. Cook, of Cleveland, Ohio, for appellant.

Howell Leuck, Asst. U. S. Atty., of Cleveland, Ohio (A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, James O'C. Roberts, Asst. Gen. Counsel of U. S. Veterans' Bureau, of Washington, D. C., James T. Brady, of New York City, and C. L. Dawson, of U. S. Veterans' Bureau, of Washington, D. C., on the brief), for appellees.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

DENISON, Circuit Judge. Herman Reivich died in October, 1918, holder of a $10,000 war risk insurance policy, payable to himself as beneficiary. By will made before the application for the policy, he had made his grandmother sole legatee. Following the then prevailing view that such a legatee was not a "designated beneficiary" under the War Risk Insurance Act (Comp. St. § 514a et seq.), the Director of the Bureau, in March, 1919, awarded the insurance to the soldier's brother, Alex Reivich ("as the person named as beneficiary by" the soldier), and payments to him were begun. Later the question was raised as to his right, and July 11, 1924, it was decided that he was the sole person entitled, as against other relatives, and another award to him was made. The payments to him, including July, 1924, aggregated $4,073. On August 26, 1924, the Bureau, following U. S. v. Napoleon (C. C. A. 5) 296 F. 811, decided that the award to him had been erroneous, and that the "proceeds are properly payable" to the grandmother as the designated beneficiary. It soon appeared that in July, 1924, the grandmother had died. In October the Bureau wrote to counsel for Reivich: "You are advised that it has been determined that the grandmother of the insured was entitled to the monthly payments of insurance during her lifetime under will of the insured. However, it has been determined further that the payments of the insurance previously made in this case will be allowed to stand, and that, subsequent to the death of the grandmother, the full brother, your client, Alex Reivich, under the laws of the state of Ohio is entitled to the remaining installments of the insurance."

In May, 1925, Reivich was advised that formal proof of the death of the grandmother had been received, but that owing to the provisions of section 303 of the Veterans' Act, as amended March 4, 1925 (38 USCA § 514), the remaining payments should be commuted and paid to the estate of the insured; "the remaining insurance will therefore be payable to Mr. Cahuse, as executor." On May 26, Reivich was advised by the Bureau "that the precise amount of the remainder of

the insurance which will be so paid to the executor is $7,748." Later Reivich became administrator d.b.n. c.t.a. of the soldier's estate in place of the named executor, and in September he was again advised "that it has been held that the insurance installments payable subsequent to the death of your grandmother are now payable to the administrator of the veteran's estate in a lump sum." At a later date, the Bureau deducted from this $7,748 the $4,073 which had been previously paid to Reivich as brother, and paid to Reivich as administrator only the balance, being $3,675. This voucher and payment were apparently the first notice that the Bureau intended to deduct from the present value of the remaining payments the amount of those payments which it held had been erroneously made to Alex Reivich, as beneficiary. It appears, also, that the administrator of the grandmother's estate was before the Bureau claiming this $4,073, and that the Bureau was intending to pay this sum to that administrator, though apparently no award had ever been made to the grandmother.

In this situation, this bill was filed in the court below by the administrator of the soldier against the United States and the grandmother's administrator, asking payment of the balance, $4,073, which the Bureau had deducted. The United States and the grandmother's administrator filed answers and cross-complaints, affirming that the grandmother's administrator was entitled to this balance. Upon final hearing in this case, the court below agreed with the views of the Bureau and directed payment of this balance to the grandmother's administrator. The record contains no finding of facts and no agreed statement, but the opinion and decree say that the facts were agreed upon and the opinion summarizes them. We assume that the stipulation existed as recited.

[1] The underlying question involved is whether the grandmother was the "designated beneficiary" under section 402 of the original act (Comp. St. § 514uuu). Where a will was made before the insurance was in existence or contemplated, and where in the application the soldier refrained from naming this legatee in the blank provided therefor, but named "himself," we can feel no certainty that this legatee is that "designated beneficiary" whom section 402 contemplates. That he is was considered in the Napoleon Case, supra (though perhaps, on account of the pleading, not expressly decided); that case on that point has not been doubted; and the Bureau has followed it for years in many cases. Lacking any conviction to the con-

trary, we think it better to accept and follow the rule there announced.

[2] The question chiefly argued is as to the construction of section 303. Correctly to apprehend it, as applied to this case, its origin and development should be observed. In the original War Risk Insurance Act of October, 1917, the conditions of the policies were not fully stated but were to be fixed by regulations, though the statute, section 402, expressly prescribed that, "if no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons, within the permitted class of beneficiaries as would under the laws of the State of the residence of the insured, be entitled to his personal property in case of intestacy." Bulletin No. 1 of the Bureau, dated October 15, 1917, prescribed the form of policy; and this form, after providing a blank for designating the beneficiary to whom the payments were to be made, continued: "If no beneficiary within the permitted class be designated by the insured, either in the insured's lifetime or by last will and testament * * * the insurance (or, if any above designated beneficiary shall survive the insured but shall not receive all the installments, then the remaining installments) shall be payable [etc., as in section 402]."

It will be seen that the statute, section 402, apparently contemplated that the designated beneficiary who survived the insured would take an interest, which under ordinary rules would be a vested interest, in all the unpaid installments, fairly implying that those remaining unpaid, upon the subsequent death of the beneficiary, would go to the beneficiary's estate, while the form of contract provided by Bulletin No. 1 took away from the beneficiary's estate this interest in the remaining payments upon the beneficiary's death and transferred it to the insured's estate. A doubt is at once suggested whether, under the guise of a regulation, the Bureau could make a provision so different from the statutory provision; but the form of the bulletin became the contract of the parties in this policy as in all the others of the vast number issued; it has been accepted and treated as a valid provision of the contract by the Bureau ever since 1917; it was sustained (although the point was not made) in Cassarello v. U. S. (C. C. A. 3) 279 F. 396; and we would not be justified in declining to accept it as the contract which governed these parties and continued to do so until Febru-

ary, 1920, at which date there took effect upon this policy section 15 of the Act of December 24, 1919 (41 Stat. 376 [Comp. St. § 514vv(1)]). This statute, so far as now important, said: "That if any person to whom such yearly renewable term insurance has been awarded dies, or his rights are otherwise terminated after the death of the insured, but before all of the 240 monthly installments have been paid, then the monthly installments payable and applicable shall be payable [etc., as in section 402]." Construed literally, this statute does not apply to this case, for it refers only to the consequences of the death of a person to whom the insurance has been awarded, and Reivich's grandmother had died before any award had been made; but we observe no substantial difference between the provisions of the policy on this subject (the identity of the contingent beneficiaries), as fixed by Bulletin No. 1, and the provisions of this section 15. Hence the applicability of the statute is not important.

By the Act of June 7, 1924, known as the World's War Veteran Act (43 Stat. 607 [38 USCA § 421 et seq.]), all existing laws relating to soldier's insurance were revised and re-enacted and the old laws repealed. The provisions relating to insurance were, in the main, embodied in title 3, beginning on page 624, and containing sections 300–307 (38 USCA §§ 511–518). Section 303 is uncertain and confused. If it applied at all to term insurance, it could not reach this present case, because it contemplated as a foundation the death of the named beneficiary with no surviving person in the permitted class—not this situation; but, before any attempt was made to apply it to the Reivich policy, it was superseded by the amended form of the Act of March 4, 1925 (43 Stat. 1310). This is: "If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award. * * * This section shall be deemed to be in effect as of October 6, 1917."

The only difficulty in applying this section to the Reivich situation is found in the provision that the present value shall be computed "as of date of last payment made under any existing award." There was no "existing award." The last payment made was under an award later revoked. However, this language would apply to the ordinary case arising under the statute, and in so far as, in some cases, it does not apply, and so fails to fix a date for computation, it does not leave the statute unworkable, but fairly contemplates that the Bureau shall follow the directions as nearly as may be.

We assume therefore that the question to be decided is whether this section 303, when, upon the death of the designated beneficiary, it gives to the insured's estate the commuted value, instead of giving the future payments 'to the next-in-line lawful beneficiary, takes effect to transfer all installments not then paid, or only those which had not accrued to the designated beneficiary before her death. This matter would present more difficulty if it pertained generally to payments not received; but we think the intent is clear enough to divide the payments into two classes, those monthly installments "thereafter payable" and those which have become payable. The award to the estate of the soldier is distinctly limited to those installments "thereafter payable"; there could not have been any intent to leave any hiatus between the classes; and it must follow that those installments which had become payable belonged to the estate of the deceased beneficiary and all others to the new beneficiary then created. This view is confirmed if not required by the provisions of section 26 of the same act (43 Stat. 614 [38 USCA § 451]), which is, with immaterial variations, a re-enactment of section 19 of the act as amended December 24, 1919 (41 Stat. 376, [Comp. St. § 514vv(6)]). True, this only says "may be paid"; but it distinctly recognizes that installments which have become due at the death of the beneficiary belong to that estate—else why may they be so paid?

We cannot agree with the contention of appellant that the amendment to section 303, perfected in 1925, was intended to avoid and to change the rule of Cassarello Case that the beneficiary took the title to installments payable before his death. The amendment changed the beneficiary in the event of a certain contingency; but the contingency was stated in language the same, or substantially the same, as that of Bulletin No. 1 and the Act of 1919. In both of these, as in the amendment in 1925, reference was to the death of the beneficiary before all the 240 payments had been made or had been received.

[3] The remaining question is as to the set-off or deduction charged against the admin-

istrator plaintiff. There is, of course, plenty of authority that the parties in the claim sued upon and the claim set off must be the same and acting in the same capacity; but no one of these authorities decides or seems to reach in principle a case where the plaintiff, though nominally administrator of the estate, is in fact with reference to the claim involved not an administrator in the ordinary sense but only a trustee for himself as an individual—and a naked trustee at that. Reivich, as administrator, would hold whatever he recovered in this case merely for the purpose of paying it over to himself, and neither creditors of the deceased nor next of kin nor, we presume, the state, has any interest whatever. Under these peculiar circumstances the objection to the set-off is without equitable substance.

It seems probable that the Bureau changed its intention on this 'subject after assuring Reivich that the earlier payments made to him would be allowed to stand; but apparently it had the right to do so. If section 28 of the Act of June 7, 1924 (38 USCA § 453), positively forbade a recovery of payments which might have been made to any beneficiary who was without fault, it would at least make the matter of the set-off doubtful; for there is not much difference between recovery of payments by suit and recovery by retention of what otherwise would be paid; but the prohibition is not complete. It applies only in cases where in the judgment of the Bureau such recovery would be against equity and good conscience. The action of the Bureau here is clearly inconsistent with any opinion on its part that the retention of this money is against equity or good conscience. The facts present no sufficient basis for disregarding the judgment of the Bureau.

The decree is affirmed.