## McDONNELL v. BANK OF CHINA et al.[*]

Circuit Court of Appeals, Ninth Circuit.
July 15, 1929.

No. 5687.

[*]Rehearing denied September 23, 1929.

of American Overseas Warehouse Company, Inc., an insolvent American corporation, which had theretofore conducted a warehouse business at Tientsin, China. When the assignee assumed charge of the warehouse, he found therein 91,666 bags of flour in one common unsegregated mass, without marks, except the brands on the bags, and without anything to indicate that any portion of the flour belonged to any particular person. He further discovered that against this quantity of flour there were outstanding warehouse and other receipts calling for the delivery of upwards of 1,000,000 bags. Of this quantity the plaintiffs in the court below held go-down warrants, or warehouse receipts, for 996,500, and the National City Bank of New York a go-down warrant and other receipts for 161,-000.

By consent of all parties in interest, the assignee sold the flour on hand for approximately $300,000 in Tientsin currency. He then formulated a plan for the ratable distribution of the proceeds of the sale among all receipt holders in proportion to the number of bags of the various brands of flour called for by their respective receipts. Under this plan of distribution there was allotted to the National City Bank the sum of about $53,000, and the balance, less expenses, was allotted to the plaintiffs. The plaintiffs, not being satisfied with the allotment made to the National City Bank, brought the present suit in the court below against the assignee to recover the entire proceeds of the sale.

The defense interposed by the assignee was a partial one only, setting up the claim of the New York City Bank to the sum of approximately $53,000, allotted to it under the proposed plan of distribution. The court below reduced the allotment to the New York City Bank to the sum of approximately $6,600, subject to a further deduction of approximately $3,300 in the event that no flour of a particular brand came into the possession of the defendant as assignee. A judgment or decree was thereupon entered awarding to the plaintiffs the entire proceeds of the sale less the amount awarded to the New York City Bank and less the expenses of the assignee. From this judgment or decree both parties have appealed.

In its decision the court below adopted the general rule that, where goods belonging to different persons are so intermingled as to be indistinguishable, whether by consent of the owners or by wrongful act of the depositary, the owners become tenants in common of the mass, and, if a part of the commingled

Fleming, Franklin & Allman, of Shanghai, China, and Pillsbury, Madison & Sutro, of San Francisco, Cal. (Alfred Sutro and Eugene M. Prince, both of San Francisco, Cal., of counsel), for appellant and cross-appellee.

P. H. B. Kent, of Tientsin, China, and Frank E. Hinckley, of San Francisco, Cal., for appellees and cross-appellants.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. August 1, 1927, R. T. McDonnell became the assignee

property is lost or misappropriated by the depositary, all owners must bear the loss pro rata. All parties to the appeal concede the correctness of this rule as a general proposition of law.

Before taking up the merits, we must dispose of a contention made by the appellee and cross-appellant to the effect that this court cannot consider the sufficiency of the evidence to support the findings or judgment under its decisions in China Press v. Webb (C. C. A.) 7 F.(2d) 581, Wulfsohn v. Russo-Asiatic Bank (C. C. A.) 11 F.(2d) 715, and Gillespie v. Hongkong Banking Corporation (C. C. A.) 25 F.(2d) 670. The contention is well taken if this was an action at law; but the proceeding was equitable in its nature and objects. It was a proceeding against a trustee or assignee for the equitable distribution of a fund in his hands, and it is well settled that such a proceeding is properly instituted in a court of equity. As said by the court in Dows v. Ekstrone (C. C.) 3 F. 19, 20:

"When a warehouseman, having in store a quantity of wheat deposited by several persons, for which, under the statute, he issues receipts to each depositor, fraudulently disposes of part of the wheat, the receipt holders must share in what remains according to the equitable interest of each, to be ascertained by an accounting. No one of such receipt holders can recover at law the whole, nor could any number of such holders, less than the whole number, recover possession as against the remainder. This case must be brought in a court of equity, where all the claimants can be heard and decree can be rendered establishing the rights of each with respect to the property in controversy."

And to such a proceeding it would seem that the New York City Bank was an indispensable party; but that objection was not urged in the court below, nor is it particularly urged in this court. National City Bank v. Harbin Electric Joint-Stock Co. (C. C. A.) 28 F.(2d) 468.

We come now to a consideration of the merits. The only claim in controversy is the claim of the New York City Bank, and that claim is based on six separate and distinct transactions, all of which are similar in form, except one which was later accompanied by a warehouse receipt, and is for that reason more favorable to the appellant than the remaining five. We will refer to one of the transactions as illustrative of the others. April 5, 1927, the Union Trading Corporation executed its promissory note payable to the order of the warehouse company for the sum of $80,000, Tientsin currency, with interest at the rate of 10 per cent. per annum, and deposited with the warehouse company as collateral security for the payment of the loan 40,000 bags of flour of two different brands and 60 bales of gunny bags containing 400 bags each. This note was apparently discounted by the National City Bank of New York and the Warehouse Company gave the bank the following receipt: "We have received the goods mentioned in this instrument and we will hold them to the order of the National City Bank of New York, and we hereby transfer all our rights under this instrument to the National City Bank of New York."

The court below held that these instruments conferred no rights on the appellant as against the holders of warehouse receipts, unless the appellant was able to identify the flour that came into the possession of the assignee as the identical flour delivered in pledge. This, of course, the appellant, like other claimants, was unable to do. The correctness of this ruling is the question for decision here. The first question is, was there a valid pledge in the first instance. Two things are essential to constitute a pledge: First, possession by the pledgee, and, second, that the property pledged be under the power and control of the creditor. Casey v. Cavaroc, 96 U. S. 477, 24 L. Ed. 779. The transaction between the Union Trading Corporation and the warehouse company satisfied those requirements. Whether the property pledged could be identified or was part of a general mass at the time the pledge was made, is not disclosed by the record, nor do we deem that fact material so long as the pledgee had possession of the whole. Weld v. Cutler, 2 Gray (Mass.) 195; Merchants' Bank of Detroit v. Hibbard, 48 Mich. 118, 11 N. W. 834, 42 Am. Rep. 465.

In the latter case Judge Cooley said:

"Undisputed authorities bring the legal controversy within very narrow compass, and render general discussions needless. We have already said that it is conceded a warehouseman may transfer title to property in his warehouse by the delivery of the customary warehouse receipt. In such cases there is no constructive delivery of the property whereby to perfect the sale except such as is implied from the delivery of the receipt; and when the property represented is only part of a large mass as was the case here, there could not well be any other constructive delivery. But for the convenient transaction of the commerce of the country, it has been found necessary to recognize and sanction

this method of transfer, and vast quantities of grain are daily sold by means of such receipts. * * * We are then to see whether a constructive transfer of possession that is recognized in the case of sale shall be held inoperative in case of an attempted pledge.

"If a distinction is made in the cases it ought to be upon some ground that would seem reasonable in commercial circles, where men may naturally be expected to be familiar with the ordinary methods of doing business but not with technical rules for the government of special cases. For business purposes rules should as far as possible be general, for the very satisfactory reason that special exceptions not made upon obvious reasons are not likely to be understood or observed. And the special exception supposed to exist in this case would be peculiarly liable to mislead if it were recognized. If a merchant may buy grain in store and receive a transfer of title in a warehouse receipt, he should be very likely if he had occasion to receive grain in pledge, to suppose a similar receipt to be sufficient for that purpose. No reason would occur to him why it should be otherwise, and this because there would in fact be no reason except one purely technical depending on nice legal distinctions. When that is found to be the case any proposition to establish a distinction should be rejected, decisively and without hesitation; for the laws of trade are made and exist for the protection and convenience of trade, and they should not tolerate rules which have the effect to border the chambers of commerce with legal pitfalls."

■ As long as the Warehouse Company held the note of the Trading Corporation, it will be conceded that it could assert no right as pledgee in any of the flour in storage as against the holders of warehouse receipts, where there was not sufficient flour in storage to meet the demands of all. 27 R. C. L. 979.

■■ But when the warehouse company attorned or transferred its right in the pledged property to the appellant, a different situation arose. For while prior to the transfer the warehouse company held the pledged property in its own right, after the transfer it held it as agent or bailee for the transferee. It may be conceded that the relations existing between the warehouse company and the holders of outstanding warehouse receipts were somewhat different from the relation existing between the warehouse company and the appellant, but in the absence of some statute giving a priority of right to the holders of warehouse receipts, we are of opinion

that the several claimants stand on an equal footing in a court of equity.

"Thus in equity it is a general rule that equitable assets shall be distributed equally and pari passu among all the creditors without any reference to the priority or dignity of the debts; for courts of equity regard all debts in conscience as equal jure naturali and equally entitled to be paid; and here they follow their own favorite maxim that equalty is equity: 'Æquitas est quasi æqualitas.' And if the fund falls short, all the creditors are required to abate in proportion." 2 Story's Eq. Jur. (14 Ed.) § 754. See, also, Eggers v. Hayes, 40 Minn. 182, 41 N. W. 971; Union Trust Co. v. Wilson, 198 U. S. 530, 25 S. Ct. 766, 49 L. Ed. 1154. The decree must therefore be reversed.

■ Inasmuch as the court below left undetermined the question whether any flour of a certain brand came into the possession of the assignee, a final decree cannot be entered here. That question should be determined, however, in advance of any final decree. The case will therefore be remanded to the court below for further proceedings not inconsistent with this opinion.

DIETRICH, Circuit Judge (dissenting). I am unable to take the view that there should be a reversal upon the assignee's appeal. He, of course, has no real interest and can be recognized only as representing the National City Bank. For some reason, not disclosed, that institution has not seen fit to appear, by intervention or otherwise, and thus become bound by any judgment that may ultimately be entered. Admittedly it holds no formal go-down warrants or warehouse receipts. I agree that mere form is not controlling, and that, with informal documents resting upon the fact of actual warehousing, it should be given a footing with the holders of formal receipts. But under commercial usage and the law a formal warehouse receipt, like more common negotiable instruments, carries certain presumptions, and its production establishes for the holder a prima facie case. Such presumptions I do not think attend the documents here produced on behalf of the National City Bank. Ordinarily a warehouse receipt imports an obligation of the warehouse company, and thus being against interest, it may be presumed to have been issued only for goods actually received. Here there was no such safeguard. The certificate or document relied upon as a warehouse receipt was issued by the warehouse company, in the furtherance of its own inter-

ests. It wanted the bank's money and could get it only by executing such a paper.

In the ordinary case of warehousing, the warehouse company would have no incentive to falsify the facts by issuing a receipt for goods it did not actually receive; here by issuing a false receipt it would be able to get the bank's money. Though without a formal receipt the bank here offered no evidence that the actual facts were such as to justify the issuance of such a document. Not only did the assignee, who, having possession of the records of the warehouse company, presumably was in a better position than any other party to the suit to make proof, fail to offer any evidence, but he resisted the efforts of appellee, affirmatively to show that the company had never received the flour. No explanation is offered of the circumstances surrounding the transaction with the bank, and no evidence even of its date. While in the briefs it is argued that the bank should be protected as a holder in good faith, it did not see fit to disclose to the court the facts from which it would appear to be such a holder. In the opinion of the majority it is said: "As long as the warehouse company held the note of the trading corporation, it will be conceded that it could assert no right as pledgee in any of the flour in storage as against the holders of warehouse receipts where there was not sufficient flour in storage to meet the demands of all. 27 R. C. L. 979. But when the warehouse company attorned or transferred its right in the pledged property to the appellant, a different situation arose." But there is no evidence other than the self-serving certificate that the warehouse company had on hand any of the supposed flour when it dealt with the bank. And if, as stated in the majority opinion, it could assert no right against other holders of warehouse receipts, if at the time it dealt with the bank "there was not sufficient flour in storage to meet the demands of all," how could it transfer to the bank a right it did not possess? We know only that on August 1, 1927, there were in the warehouse 91,666 bags of flour, against which there were outstanding regular receipts for 996,500 bags. Are we to presume that a short time prior to that date, when the warehouse company gave to the bank the certificate or acknowledgment (the precise date of which is not shown) it had in its possession more than 1,000,000 additional bags?

I think the decree should be affirmed, with the exception only that as suggested in the last paragraph of the majority opinion, the court below should be directed to make a finding on the undetermined question there referred to.