12057

MOORE *ET AL.* v. BENNETTSVILLE WAREHOUSE CO.

(134 S. E., 395)

1. CONTRACTS.—At common law a contract with oneself or with oneself and another is void.

2. WAREHOUSEMEN.—Cotton warehouse receipt, issued to itself by warehouse company and placed as collateral for note, *held* valid, in view of Negotiable Instruments Law, § 8.

3. EQUITY.—Controversy as to basis on which receiver's dividend should be declared, which involves enforcement of the administration of the trust, is within equity jurisdiction.

4. RECEIVERS—BANK HOLDING NOTE OF WAREHOUSE COMPANY AND COTTON WAREHOUSE RECEIPT ISSUED BY WAREHOUSE TO ITSELF AS COLLATERAL SECURITY HELD NOT ENTITLED TO FILE BOTH RECEIPT AND NOTE AS BASIS FOR SEPARATE CLAIMS IN RECEIVERSHIP PROCEEDING AGAINST WAREHOUSE COMPANY.—Where warehouse company issued cotton warehouse receipt to itself and indorsed it to bank

as collateral secrity for note, *held,* bank could not file both receipt and note as basis for separate claims in receivership proceedings against warehouse company, though it might in addition to filing note recover what it could on its collateral provided such recovery plus receiver's dividend on note did not exceed the indebtedness due it.

Before DENNIS, J., Marlboro, April, 1925.   Affirmed.

Receivership proceeding by B. E. Moore and others against the Bennettsville Warehouse Company. From a judgment denying in part the claim of the Atlantic National Bank, it appeals.

The following is the Referee's report and the Circuit Court's judgment overruling exceptions thereto:

## "REFEREE'S REPORT

"On ———, 1920, the Bennettsville Warehouse Company issued unto itself a certain warehouse receipt for 195 bales of cotton. It thereupon borrowed from the Atlantic National Bank the sum of $10,500, for which it duly gave its note, due 12/3/20, attaching thereto, as security therefor, the warehouse certificate for the cotton aforesaid, which it indorsed, and by this means delivered to the Atlantic National Bank. A dividend has heretofore been ordered, and has been paid, to the general list of creditors of the Bennettsville Warehouse Company, but the question of the dividend to be paid to the Atlantic National Bank has been left open, owing to the disagreement among counsel representative of the various parties as to the exact basis upon which the Atlantic National Bank is to receive a payment.

"It is needless to say that, subsequent to the transaction above outlined, the Bennettsville Warehouse Company became insolvent, and a receiver was appointed by this Court to take charge of and manage its affairs. The cotton represented by the warehouse receipt above described was fraudulently and feloniously disposed of, along with a great quantity of other cotton held by the Bennettsville Warehouse Company, by T. B. McLaurin, its president and the man

in active charge and control of its affairs, prior to the assumption of jurisdiction by this Court over the general assets of the company, through the appointment of a receiver to administer said assets.

"Those who had cotton on storage in the Bennettsville Warehouse Company and who held receipts issued by this company, as custodian and bailee of such cotton, have received a dividend from the receiver, based upon a heretofore established valuation, but the plight of the Atlantic National Bank is different from those referred to, in that it had no cotton on storage with the Bennettsville Warehouse Company as its own property, but merely held an assignment of a warehouse receipt, representing the cotton alleged to be the property of the Bennettsville Warehouse Company, as collateral security for a certain indebtedness owing to it by the Bennettsville Warehouse Company.

"The Atlantic National Bank is filing and is demanding of this Court a dividend, not only upon the note of the Bennettsville Warehouse Company, which represents an indebtedness of approximately $10,000, but also upon the warehouse receipt held by it as security for this note and representing the cotton specified therein.

"There seem to be only two serious legal questions which arise in this matter. They are: . (a) Is or not the warehouse receipt issued by the Bennettsville Warehouse Company unto itself, and by it indorsed and transferred to the Atlantic National Bank, as security, a nullity? And (b) If not a nullity, may it be filed as against the receiver as a basis for a dividend in addition to the filing of the note itself? Or, to speak in rough figures, may the Atlantic National Bank file a claim for approximately $10,000 on the original indebtedness and an additional claim for approximately the same amount on the security represented by the warehouse receipt?

"As to the first of the questions involved, it seems to be, undoubtedly, the common-law rule that a contract by one with himself, or with himself and another, is

void. 13 C. J. 262; *Canterberry v. Miller,* 76 Ill., 355. *Gorham v. Meacham,* 63 Vt., 231; 22 A., 572; 13 L. R. A., 676. *Debard v. Crowe,* 7 J. J. Marsh. (Ky.), 7; 22 Am. Dec., 113. *Griffith v. Chew,* 8 Serg. & R. (Pa.), 17; 11 Am. Dec. 556. *Eastman v. Wright,* 6 Pick. (Mass.), 316. *Livingston v. Livingston,* 2 Mill, Const., 428; 12 Am. Dec., 684. *Glenn v. Sims,* 1 Rich., 34; 42 Am. Dec., 405. However, the last three cases cited seem to hold that, while such contracts are void and unenforceable at law, they may be proceeded upon and enforced in equity in proper cases for equitable jurisdiction. Not only does this seem to be the case, but exceptions seem to have been generally made to this rule in favor of negotiable instruments, and, in fact, Section 8 of the present Negotiable Instruments Law of South Carolina (Civ. Code, 1922, § 3652 et seq.), specifically authorizes the maker to denominate himself as payee of a note, which, upon indorsement by him and delivery to a third party, becomes a valid and binding instrument.

"For several reasons I am convinced that the warehouse receipt so made out, indorsed, and delivered is valid and not a nullity; the principal one of which is, in my opinion, that it is a negotiable instrument and entitled to the doctrine which has been laid down relative to negotiable instruments made payable to the maker. Secondly, I am convinced that 'a controversy as to the basis on which a dividend should be declared by the receiver which involves the enforcement of the administration of the trust is within the jurisdiction of equity.' See *T. B. Merrill, Receiver, v. National Bank of Jacksonville,* 173 U. S., 131; 19 S. Ct., 360; 43 L. Ed., 640. For these reasons I am satisfied that the Atlantic National Bank is the holder of a perfectly valid warehouse receipt, which it holds, and has for some time held, as security for its claim against the Bennettsville Warehouse Company.

"Having arrived at this conclusion, it becomes necessary to pursue the investigation a step further and to determine whether or not this valid security may

be used as the basis of a claim against the insolvent estate in addition to the indebtedness itself, as represented by the note. I freely concede that under the decisions, both of the Supreme Courts of the United States and of South Carolina, which have been cited to me during the course of the arguments in this matter, that the bankruptcy rule relative to the filing of claims by secured creditors does not apply in this case. It seems apparent that under the law applicable to distribution of the estates of insolvents through the medium of State Courts, a secured creditor may prove for the entire amount of his claim, which includes principal and interest to the date of insolvency, and may, in addition thereto, rely on his security, providing, always and only, his total receipts on his claim and on the security do not exceed the amount of his debt. This rule, however, does seem to have been modified in South Carolina to the extent that where the security consists of insolvent debtors' own property, the creditor holding the security must either realize it or value it and prove his claim for the balance of the debt; but, under my view of this case, neither of these rules, or doctrines, has any particular significance, as both seem inapplicable as I regard the facts. I do not think that the cases cited by counsel for the Atlantic National Bank go quite as far as is contended by them. It is certainly true that, had the warehouse receipt represented cotton actually owned by the Atlantic National Bank and deposited with the Bennettsville Warehouse Company for storage, it could and would, along with others in the same plight, been compensated therefor, so far as it was possible to do so, on a dividend basis, and, of course, in addition thereto it could and would have been so compensated in reference to indebtedness owing it by the Bennettsville Warehouse Company, but, as stated above, the Atlantic National Bank seems to be in different plight from others who have received dividends based on warehouse receipts, in that the others owned the cotton and placed it with the company for storage, whereas this bank merely held the receipt as collateral to an indebtedness.

"I think there can be no question that the Atlantic National Bank is entitled to a dividend on the indebtedness represented by the note, computed as above outlined, and, in addition thereto, might recover what it could upon its collateral and apply it to the indebtedness, providing such recovery plus the dividend did not exceed the indebtedness; but, according to the evidence, the cotton is not in the receiver's hands, and has been dissipated and forever lost, both to the estate and to the bank.  It would seem that by the dissipation and loss of the cotton the bank must be the sufferer, as it has lost the security upon which it relied for the collection of its debt.  In other words, at the time the receiver was appointed the bank was in the position of holding an indebtedness against the warehouse company for a security which was valueless and destroyed to all practical intentions, and to allow it to participate in a dividend based on the security as well as on the debt would, in my opinion, be to allow it to better its status because of the intervening receivership.  If no receiver had been appointed and if the Bennettsville Warehouse Company were still operating independently of the Courts, the Atlantic National Bank would be in the position above indicated, to wit, it would hold the note (the debt) and a warehouse certificate representing cotton feloniously removed and disposed of; and, so far as I am able to see, if unable to locate the actual cotton represented by the receipt, it would have no redress other than a straight suit upon the note and such criminal action as might inure to its benefit.  If this be the case, its right would seem to be enlarged by the receivership if its contention were sustained.  Of course, if the cotton were in the receiver's hands and the general estate were swelled by its value, an entirely different situation would arise.  But this is not the case, and I am unable to see why the Court should order the receiver to pay to the bank a dividend on its worthless receipt.  Why should the holder of a security be entitled to priority over others except as to the particular property of the estate affected by the lien of the security?  And if that

property which is affected by the lien of the security is not a part of the estate at all, why should the mere lien on dissipated property entitle it to a double dividend? I must confess that I am unable to see any reason for so declaring, and in this conclusion, after carefully considering the cases of *Wheat v. Dingle,* 32 S. C., 473; 11 S. E., 394; 8 L. R. A., 375. *Ragsdale v. Bank,* 45 S. C., 575; 23 S. E., 947. *Piester v. Piester,* 22 S. C., 139; 53 Am. Rep., 711, I am unable to discover any inconsistency therewith or departure therefrom. Certainly, my conclusion is not inconsistent with the following language from *Piester v. Piester, supra,* p. 143: 'As we understand it, a mortgage is a pledge, a mere security quoad the property mortgaged, and takes rank only by virtue of its lien on the specific property embraced in it. As soon as the property pledged is exhausted or destroyed, the lien ceases to exist. With its subject-matter expunged and its lien gone, a mortgage cannot possibly be more than the sealed covenant of the party. There is nothing in principle or in the nature or terms of the instrument itself, which authorizes the mortgagee to foreclose it upon any other property of the mortgagor, while living; and why should it be otherwise after his death?'

"And again, at page 145: 'In the assets of an insolvent testator or intestate, mortgages, as mortgages, are not entitled to priority over rent, specialities, and simple contract debts, except so far as they are liens on any particular part of the estate. After the lien is exhausted the grade of the demand must be determined by the nature of the instrument which the mortgage was given to secure.'

"Of course, the case above cited differs from the case at bar in that (a) it is the administration of the estate of a deceased, and (b) it involves a mortgage rather than a warehouse receipt held as collateral security; but I believe the situations to be analogous and the doctrines of law controlling them to be the same. I cannot see how the Court can permit a bank to double its claim and thereby secure an advantage over other creditors, simply because it holds a

warehouse receipt for cotton which, for the purposes of this case and of the receiver of this estate, is nonexistent.

"I therefore conclude and recommend that the claim of the Atlantic National Bank should be allowed for the amount of the principal of the note with interest thereon to the date of the receivership, to wit, December 10, 1920."

## "JUDGE DENNIS' DECREE

"This matter comes before me upon exceptions to the report of the Special Referee, Hon. C. L. Prince. After hearing argument of counsel, I have concluded that the exceptions should be overruled. It seems to me that Mr. Prince has given this matter most careful attention and consideration, and his report is entirely satisfactory to me.

"It is therefore ordered and adjudged that all exceptions to the report of the Referee be overruled and said report be approved in all particulars."

*Messrs. Mitchell & Horlbeck* and *McColl & Stevenson,* for appellant, cite: *Warehouse receipt payable to warehouseman and endorsed and pledged by him is valid pledge:* 16 L. R. A. (N. S.), 227; 27 R. C. L., 963; 40 Cyc., 408. *Warehouse receipts negotiable:* Civ. Code, 1922, Sec. 3906. *Rights of creditors of insolvent estate:* L. R. A., 1918-B, 1024; 7 C. J., 750; 32 C. J., 882. *Same secured creditors:* 45 S. C., 606; 45 S. C., 575; 32 S. C., 475. *Lien on cotton as collateral lost with loss of cotton:* 22 S. C., 139. *Case distinguished:* 94 Am. Dec., 773; 21 R. C. L., 675. *Upon conversion of pledged property pledgee has cause of action against pledgor:* Civ. Code, 1922, Secs. 3905 and 3910; 2 McC. Eq., 128; 48 Am. Dec., 244; 40 Cyc., 449; 21 R. C. L., 663. *Pledgee of warehouse receipt is purchaser for value:* 40 Cyc., 422 and 428. *Case distinguished:* 22 Cyc., 139.

*Messrs. Tison & Miller,* for respondent.

August 24, 1926.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by C. L. Prince, Special Referee, confirmed by Judge Dennis, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY dissent.

MR. CHIEF JUSTICE GARY did not participate.

MR. ACTING ASSOCIATE JUSTICE R. O. PURDY (dissenting) : To deny the bank the right to participate in the assets on the basis of the fixed value of the cotton which was converted and to get its dividend on its claim represented by the note, after crediting the amount to which it is entitled to receive from the value of the cotton, is to deny the bank any remedy for its loss caused by the conversion of the cotton.

MR. JUSTICE COTHRAN (dissenting) : The issue in this matter is one between the Atlantic National Bank and the receiver of the Bennettsville Warehouse Company, having arisen in the winding up of the affairs of the corporation.

On December 6, 1920, the plaintiff, Moore, instituted an action against the above-named corporation for the purpose of having a receiver appointed and the affairs of the corporation liquidated. The respondent J. W. Tison was duly appointed receiver. Creditors were called in to establish their demands. They consisted of three classes: General unsecured creditors; owners of cotton deposited in the warehouse who held warehouse receipts therefor; and the Atlantic National Bank, which held a warehouse receipt for 125 bales of cotton, issued by the warehouse company to itself on January 21, 1920, and assigned by it to the bank on June 3, 1920, as collateral security to a note given by it to the bank on September 27, 1920, due Devember 3, 1920, for $10,000. (Further details of the note do not appear in the record for appeal, nor are they necessary in determining the question at issue.)

When the receiver took charge of the affairs of the corporation, it was ascertained that a large quantity of the cotton stored in the warehouse, including that of the owners for

which they held warehouse receipts, and that for which the bank held the receipt above referred to as collateral security, had been fraudulently and feloniously abstracted and disposed of by the then manager of the warehouse company.

During the administration of the insolvent estate by the receiver, his Honor, Circuit Judge Edward McIver, passed an order directing the receiver to allow the claims based on receipts for cotton abstracted, on a fixed basis value of cotton, and providing for an appeal from such valuation by the receiver. The receiver fixed the valuation at 14 cents per pound for short cotton and 20 cents for long staple. There was no appeal from this valuation.

A dividend was ordered and has been paid to the general creditors, including the owners of cotton who held receipts, but the question of the dividend to be paid to the Atlantic National Bank was left open on account of the contention of the bank thus explained:

The receipt held by the bank called for 61,700 pounds of cotton; at 14 cents per pound this would amount to $8,638. The bank contended that, as the cotton covered by the receipt which it held had been abstracted and fraudulently disposed of by the active manager of the warehouse company, it had a claim against the insolvent estate for the conversion of its cotton; that the claim for the conversion was in law substituted for the actual cotton; and that it was entitled, in the first instance, to a dividend upon the above stated value of cotton, $8,638, which dividend should be credited upon its $10,000 note, and a dividend upon the balance unpaid on this note. The controversy was referred to C. L. Prince, Esq., as special referee, who filed a report, dated February 19, 1924, disallowing the contention of the bank. Upon exceptions, his Honor, Judge Dennis, confirmed the report of the special referee in a formal order, and from that order the bank has appealed upon exceptions which raise the sole issue of the correctness of the bank's contention as above stated.

It has been held by the Supreme Court of the United States, in *Merrill v. Bank,* 173 U. S., 131; 19 S. Ct., 360;

43 L. Ed., 640, that a creditor of an insolvent estate who holds collateral security may file his claim for the full amount of the debt, unaffected by the fact that he has realized or may realize upon his collateral. The opinion of Chief Justice Fuller was opposed by a dissenting opinion of Justice White (later Chief Justice), concurred in by Justices Harlan and McKenna, and by a separate dissenting opinion by Justice Gray. It was rendered in 1898, and, nine years before that, the Supreme Court of this State had decided in the case of *Wheat v. Dingle,* 32 S. C., 473; 11 S. E., 394; 8 L. R. A., 375 (cited by Justice White along with the decisions of many other Courts), in line with the dissents in the *Merrill case,* that the proceeds or value of the collaterals should be deducted from the claim before the creditor could participate in dividends. That doctrine is sustained by the many cases cited in the note to L. R. A. 1918-B, 1026, and has the approval of this Court as now constituted. The cases of *Ragsdale v. Bank,* 45 S. C., 575; 23 S. E., 947, and *Atlantic Phosphate Co. v. Law,* 45 S. C., 606; 23 S. E., 955, accord with *Wheat v. Dingle, supra,* in the rule there stated.

It is conceded on all sides that the receiver becomes a trustee for all of the creditors, and that no creditor is obliged as a condition to his participation in dividends from the insolvent estate, to surrender any rights or interests he may have in the estate. As Chief Justice Fuller remarks in the *Merrill case,* "As the trust created by the transfer of the assets by operation of law or otherwise, is a trust for all creditors, no creditor can equitably be compelled to surrender any other vested right he has in the assets of his debtor in order to obtain his vested right under the trust"— an observation made in support of what he approved as the "fourth rule," which is as applicable to the rule declared in *Wheat v. Dingle* as to the "fourth rule."

If the cotton covered by the bank's receipt had not been abstracted, it could certainly have taken possession of it, applied the proceeds to the payment of the note, and received

its dividend upon the balance.  As the cotton has been abstracted, there accrued immediately a claim against the warehouse company for conversion, to the amount of what was afterwards settled as the value of the cotton, $8,638; and, as the bank was not compelled to surrender any right which it had as a condition to participation in dividends, it was not compelled to surrender this claim for conversion, which represents by substitution the cotton itself, and is worth what dividend may be apportioned to it.  Otherwise the bank, a secured creditor, is relegated to the ranks of the unsecured, and is held to have surrendered all rights by reason of the fraudulent conversion, as a condition to participation in the dividends, including its claim for conversion.

In the South Carolina cases above cited, it is nowhere suggested that the creditor with collateral must waive his right to realize upon his security, and must rely only upon his debt as an unsecured debt, in order to participate in the dividends.  On the contrary they recognize his right to realize on the security and apply it to his debt.  If the security has been dissipated by the act of the debtor, the liability of the debtor for conversion represents the dissipated security, and if the creditor had the right of subjecting the security, in the event that it was available, I see no reason why he should not have the right to subject that which represents it.

The Referee suggests that the security has been lost by the abstraction of the cotton.  That the bank's lien has thereby been annihilated is self-evident; but the destruction of the lien has not interfered with the liability of the warehouse company for the fraudulent conversion of the cotton; and the point which I wish to stress and repeat is that this liability represents the cotton; that if the bank has the right to subject the cotton to its claim before demanding a dividend on the balance, it has the right to subject what stands for the cotton in like manner.

The Referee presents a plausible argument, thus:

"If no receiver had been appointed and if the Bennettsville

Warehouse Company were still operating independently of the Courts, the Atlantic National Bank would be in the position above indicated, to wit, it would hold the note (the debt) and a warehouse certificate representing cotton feloniously removed and disposed of; and, so far as I am able to see, if unable to locate the actual cotton represented by the receipt, it would have no redress other than a straight suit upon the note and such criminal action as might inure to its benefit. If this be the case, its right would seem to be enlarged by the receivership if its contention were sustained."

The vice in this argument is in the limitation of the remedies permissible to the bank, under these circumstances, to an action on the note and a criminal prosecution. It would have a third remedy, an action against the company for damages, actual and punitive, on account of the fraudulent conversion of the cotton. Of course if the company were perfectly solvent, it would be immaterial whether the bank sued upon the note or for the conversion of its cotton; it would get all of its money in either case. But where the cotton has been abstracted and the company becomes insolvent, the right of the bank to set up its claim for conversion has not been destroyed; it has the right to pursue that claim, recover its dividend upon it, credit that dividend upon the note, and recover its dividend upon the balance due.

The Referee draws a distinction between the status of the bank and that of the owners of cotton who held receipts to the detriment of the bank, holding that the former are entitled to dividends upon the ascertained value of their cotton and the bank is not, for the reason that it held the receipt as collateral. I think that, on the contrary, the bank held the more advantageous position, in that it had the same right to damages for conversion which the owners had, and, in addition, an obligation by note which the others did not have. The Referee has lost sight entirely of the right of the bank to sue for conversion—a right which could not have been

destroyed by appointment of a receiver, and a right which represents the abstracted cotton.

I do not perceive the reason for thus discriminating against the bank and denying to it the claim for conversion, which alone the owners of the cotton who have received dividends upon the identical basis had. The fact that the bank was a pledgee of the receipts surely cannot be held to mark the distinction, for it is universally held that when pledged property has been wrongfully converted, a cause of action for damages accrues immediately to the pledgee. 21 R. C. L., 663.

"The pledgee of a warehouse receipt is regarded as a purchaser of the receipt to the extent of the obligation it is pledged to secure, and his rights and liabilities are therefore governed by the same rules as those of other purchasers." 40 Cyc., 428.

"A pledgee who takes a warehouse receipt as security for a contemporaneous loan is universally recognized as a purchaser for value." *Id.,* 422.

The statute Section 3906, 3 Code Laws, 1922, specifically provides that:

"Any person to whom the same may be so transferred shall be deemed and taken to be the owner of the goods, * * * therein specified, so far as to give validity to any pledge. * * *"

The result arrived at in the Court below is based upon logic which recognizes the rights of the owners of cotton to claims for conversion, and at the same time denies that right to the pledgee of cotton receipts, notwithstanding the plain terms of the statute.

It is a misconstruction to assume that, if the bank be allowed a dividend upon its claim for conversion, and also a dividend upon its note after applying the first dividend as a credit, the bank will receive a dividend upon two claims instead of one. The bank is entitled to be placed as nearly as possible in the situation it would have occupied if the cotton had not been abstracted. If that were the case, the

bank in resorting to its collateral, then crediting the proceeds upon its note and claiming a dividend upon the balance, would have had recourse to two funds as much so as if, the cotton having been abstracted, it be allowed to claim a dividend upon the ascertained value of the cotton, which now represents the cotton itself. I assume that there can be no doubt of its right in the first instance, and it appears to me as clear in the second.

Another view of the matter is this: Under the rule which prevails in this State (*Wheat v. Dingle, supra*), the secured creditor must either reduce his collateral to cash, or account for its estimated value and enter one or the other as a credit upon the principal obligation, before he may be allowed to participate in the dividends upon the balance. This he not only is compelled to do, but he is entitled to do. Now, if the collateral had not been fraudulently removed by the debtor and the value had been fixed at $8,638, the bank would have been compelled, and entitled, to apply this as a credit on its $10,000 note and receive a dividend on the balance, and, as it has been fraudulently removed by the debtor, the creditor is compelled, and entitled to apply that value as in the other instance, if it had been able to collect it, but, not being able to do so, only receiving a dividend upon it, the bank is compelled, and entitled, to apply that dividend to the note and enter its claim for a dividend upon the balance. The rights of a pledgee are, first, to subject the pledge to the payment of his debt; and, second, if the pledgor has dissipated the pledge, to hold him in damages for conversion. The latter is as much an incident of the pledge as the former—as much a right in the pledgee as the other. If the pledgee should be denied the right to his claim for damages for conversion, as a condition to his participation in the dividends, he is necessarily required to surrender a part of his collateral. "A creditor may not be required to surrender any part of his collateral until payment has been made in full." *McGrath v. Carnegie Co.,* 221 N. Y., 92; 116 N. E., 787.

In *Evertson v. Booth,* 19 Johns (N. Y.), 486, it is said:

"I know of no principle of equity which can take from him [the creditor] any part of his security, until he is completely satisfied."

See, also, *People v. Remington,* 121 N. Y., 328; 24 N. E., 793; 8 L. R. A., 458.

If the "fourth rule" declared in the *Merrill case, supra,* were in force in this State, namely, that the creditor may receive a dividend upon his full claim, regardless of the collateral, the collateral is entirely negligible, and the bank's contention in this case could not prevail. But the rule in *Wheat v. Dingle, supra,* prevails, which is opposed to the rule in the *Merrill case,* and is to the effect that the secured creditor must account for his collateral before participating. If this obligation be binding upon him, he should be allowed the value of his collateral as a credit.