## MARYLAND CASUALTY COMPANY *v.* WASHINGTON LOAN & BANKING COMPANY.

No. 6417.   November 17, 1928.

*Earle Norman*, for plaintiff in error. *Callaway & Howard*, contra.

HINES, J. (After stating the foregoing facts.)

■ The first and controlling question in this case is: Can a licensed public bonded warehouse company issue receipts for its own property stored in its warehouse, and pledge the same to secure loans of money from a bank? In discussing this question we must bear in mind the distinction between private and public warehousemen. A warehouseman is a depositary for hire. Civil Code, § 3503. Usually the relationship between a warehouseman and his customer is that of bailor and bailee, but the relationship is not established until the warehouseman comes into possession of the property. To constitute a pledge there must be a deposit of the thing pawned, and this can not be dispensed with by written agreement that the party making the pledge will be the bailee of the pawnee. Deposit of the thing pawned is the very essence of the pledge. *First National Bank of Macon* v. *Nelson*, 38 *Ga.* 391 (95 Am. D. 400). In Tradesmen's National Bank v. Kent Manufacturing Co., 186 Pa. 556 (40 Atl. 1018, 65 Am. St. R. 876), it was held that "A warehouseman is one who carries on the business of receiving and keeping goods in storage for compensation. Hence one can not be a warehouseman of his own goods." In that case the question involved was whether the warehouse receipt was in fact issued by a bona fide warehouseman, that is, whether the warehouse was a public one, or whether it was only a private one, the warehouseman storing his goods in his private warehouse and issuing receipts therefor. It was said that the "security would be greatly diminished, if not rendered worthless, if any owner could choose to say his goods were on storage with himself and issue receipts which should pass from hand to hand for value, while the goods remainded under his own control, or subject to levy by his creditors." In Fourth St. Nat. Bank v. Millbourne Mills Co.'s Trustee, 172 Fed. 177 (30 L. R. A. (N. S.) 552), it was said: "A man can not make a warehouse of himself as to his own goods, and by issuing and pledging warehouse receipts make a valid transfer as against his creditors of property which remains in his possession and under his control, without anything to distinguish it from his other property or to indicate that he is not the unqualified owner." In that case grain was contained in tanks adjoining the mills of a milling company, and flour was

stored in barrels in the basement of the company's warehouse under the charge of the mill's superintendent. The milling company issued certificates for grain or flour in store at its mill, and pledged these certificates to a bank for money loaned. It was held that these certificates did not make a valid transfer as against creditors of the milling company which became bankrupt. It is to be noted that the milling company was not engaged in doing a public warehouse business. It has been held that the principle just announced is particularly applicable when goods are stored in bulk and additions to and subtractions from the mass are being made. Swedish-American National Bank *v.* First National Bank, 89 Minn. 98 (94 N. W. 218, 99 Am. St. R. 549).

In Security Warehousing Co. *v.* Hand, 206 U. S. 415 (27 Sup. Ct. 720, 51 L. ed. 1117, 11 Ann. Cas. 789), the Supreme Court of the United States held that "Where there is no delivery or change of possession, receipts issued by a warehouse company are not entitled to the status of negotiable instruments, the transfer of which operates as a delivery of the property mentioned therein." In that case the main office of the Security Warehousing Company was in New York. Its nearest district office was in Chicago. The receipts were issued from this district office. The Security Warehousing Company had no office and no warehouse in Wisconsin. The Racine Knitting Company was engaged in manufacturing knit goods at Racine and Stevens Point, Wisconsin. The warehousing company leased certain premises from the knitting company at Racine and Stevens Point. These premises were occupied by the knitting company with their goods to be sold, and the goods were placed on the premises really occupied by the knitting company although in form leased by it to the warehouse company, and the so-called warehouse receipts were given to the knitting company by the warehousing company, acknowledging the receipt of the property at such places. They was no change of possession in fact, and scarcely any in form. These receipts were in turn pledged by the knitting company to various banks, and moneys obtained upon the security of such receipts from them. The knitting company became bankrupt, and the court held that these warehouse receipts did not have the effect, as against the creditors of the bankrupt knitting company, of vesting in the banks the title to the property for which the receipts were given. In Con-

rad *v.* Fisher, 37 Mo. App. 352 (8 L. R. A. 147), the Missouri Court of Appeals held that "The owner of goods stored in his own warehouse can not make a valid pledge of them, by issuing to another an instrument in the form of a warehouse receipt, in which he professes to hold the goods for that other." This ruling was based upon the fact that such an attempt to create a pledge violated the Missouri statute relating to chattel mortgages. These and like decisions are based upon the principles that a contract of storage requires two parties, a bailor and a bailee, and that a delivery of property is requisite for a valid pledge. We shall further consider these principles in determining the question, whether a public warehouseman can issue warehouse receipts for his own property, and pledge them for money borrowed. It is to be noted that the warehousemen issuing the receipts were not public warehousemen, and that the contests were between bona fide purchasers from, or creditors of, such warehousemen, and the holders of the receipts. This is true of the cases of *First National Bank of Macon* v. *Nelson,* supra, *National Exchange Bank of Augusta* v. *Graniteville Manufacturing Co., 79 Ga.* 22 (3 S. E. 411), and *Commercial Bank of Jacksonville* v. *Flowers,* 116 *Ga.* 219 (42 S. E. 474). In *Citizens Banking Co.* v. *Peacock,* 103 *Ga.* 171 (29 S. E. 752), some of the remarks in *National Exchange Bank of Augusta* v. *Graniteville Manufacturing Co.,* supra, were declared to be mere dicta.

By the great weight of authority, a public warehouseman can issue receipts for his own goods stored in a public warehouse, and pledge the same for money borrowed, so as to pass the title to goods so stored against creditors of, or purchasers from, such warehouseman. Merchants &c. Bank *v.* Hibbard, 48 Mich. 118 (11 N. W. 834, 42 Am. R. 465) ; State *v.* Robb-Lawrence Co., 17 N. D. 257 (115 N. W. 846, 16 L. R. A. (N. S.) 227; Millhiser Mfg. Co. *v.* Gallego Mills Co., 101 Va. 579 (44 S. E. 760) ; Alabama State Bank *v.* Barnes, 82 Ala. 615 (2 So. 349) ; Milliorn *v.* Clow, 42 Ore. 169 (70 Pac. 398) ; Ferguson *v.* Northern Bank, 14 Bush (Ky.), 555 (29 Am. R. 418, 421) ; Eggers *v.* Hayes, 40 Minn. 182 (41 N. W. 971) ; National Exchange Bank of Hartford *v.* Wilder, 34 Minn. 149 (24 N. W. 699) ; Cochran *v.* Ripy, 13 Bush (Ky.), 495 Parshall *v.* Eggert, 54 N. Y. 18, 21; 27 R. C. L. 963, § 18. In some of the cases cited the warehouse receipts were

issued by the warehouseman in the names and in favor of the holders of the receipts. In the case at bar the receipts were made to the order of the warehouse company and indorsed by the warehouse company. We do not think that this circumstance changes the well-established principle above announced. Is this principle supported by sound reasoning? We think it is. It does not contravene the familiar principles that in every bailment there must be a bailor and a bailee, that a party can not contract with himself, and that to create the relation of warehouseman there must be stored in his house the goods which are the subject-matter of the bailment. If a public warehouseman has in his warehouse goods of his own, he undoubtedly could turn over these goods to another, who could turn them back to the warehouseman and take from the latter a warehouse receipt therefor. Such a transaction would be entirely valid, and the title of the warehouseman to the goods for which the receipt was given would pass to the holder of the receipt. The mere issuing of the receipts by the warehouse company to itself did not create a bailment for the lack of bailee; but when the warehouse company indorsed these receipts and turned them over to the bank, the bailment became complete, the warehouseman holding possession for the bank as its bailee. Here we have the cotton deposited with the warehouse company and we have both bailor and bailee. Delivery of the cotton may be either actual or constructive; and when warehouse receipts for cotton are delivered in pledge, the effect of such delivery is to deliver the cotton itself. *Citizens Banking Co.* v. *Peacock,* supra; *Elliston* v. *Atlantic States Warehouse Co.,* 160 *Ga.* 237 (127 S. E. 744).

. The interests of innocent third parties are not involved, and we need not now decide whether this transaction would operate to pass the title from the warehouse company to the bank, if the rights of innocent third parties had intervened. But the case for the bank is much stronger. Under its charter the warehouse company was expressly authorized to store its own goods. Warehouse receipts are now negotiable. Civil Code, § 2913. They may be delivered in pledge. § 3528. By the uniform negotiable instruments law, which was adopted prior to the issuing of the warehouse receipts with which we are dealing, such receipts were properly drawn for the delivery of the goods represented thereby to the order of the maker thereof. Ga. L. 1924, pp. 126, 128, § 8. In the "United

State warehouse act" provision is made for the issuing of receipts for agricultural products of which the warehouseman is owner, either solely or jointly. 7 U. S. C. A. 105, § 260. Under these provisions the warehouse company could lawfully issue to itself receipts for its own goods in storage in its own warehouse, and pledge them as collateral with the bank for the loan of money. Michigan City Bank v. First State Bank, 51 N. D. 757 (201 N. W. 176) ; Moore v. Bennettsville Warehouse Co., 136 S. C. 312 (134 S. E. 395) ; Taney v. Penn National Bank, 232 U. S. 174 (34 Sup. Ct. 288, 58 L. ed. 558). The pledge of these receipts by the warehouse company to secure its indebtedness to the bank placed the title to the cotton represented thereby in the bank; and upon the conversion of the cotton represented by these receipts the warehouse company became liable to the bank for so much of the value of the cotton converted as was necessary to meet the indebtedness of the warehouse company to the bank.

■ Do the facts show a breach of the bond of the warehouse company? A warehouseman, under the "United States warehouse act," as a condition precedent to be licensed as a bonded warehouse, must "execute and file with the Secretary of Agriculture a good and sufficient bond to the United States, to secure the faithful performance of his obligations as a warehouseman under the laws of the State, District, or Territory in which he is conducting such warehouse, . . and of such additional obligations as a warehouseman as may be assumed by him under contracts with the respective depositors of agricultural products in such warehouse." 7 U. S. C. A. § 247. The warehouse company executed and filed this bond. Under it the surety is liable only for the faithful performance of the obligations assumed by the principal as a warehouseman, and of such additional obligations as a warehouseman as may be assumed by the principal under contracts with respective depositors of agricultural products in the warehouse of the principal. Do the facts show a failure of the principal to faithfully perform any obligation assumed by it as a warehouseman? We deal first with the allegations contained in the intervention of the bank. It is urged by counsel for the surety company that the relation of warehouseman did not exist between the warehouse company and the bank, for the reason that the warehouse company could not issue valid receipts for its own cotton stored in its ware-

house and pledge them to the bank to secure its indebtedness to that institution. We have undertaken to show, in the first division of this opinion, that this position, though supported by some of the authorities, is not well founded, under the law as it stands to-day. Again, it is insisted that the petition of the bank does not allege that the receipts represented actual bales of cotton stored in the warehouse. This is not necessary. The petition alleges that the warehouse company issued receipts for marked and designated bales of cotton. These receipts recited that this cotton was stored in the warehouse of the warehouse company, and that the cotton would be delivered to the order of that company. These receipts were indorsed by the warehouse company and pledged by it to secure the debt of the company to the bank. These allegations were tantamount to a statement that this cotton was actually in the warehouse at the time the receipts were issued. The clear presumption from these facts is that the cotton was in the warehouse at the time the receipts were issued. Certainly the bank, in extending credit to the warehouse company, was authorized to act upon the statement in these receipts that the cotton was stored in the warehouse, and would be delivered on the order of the warehouse company. The indorsement of these receipts by that company was such an order. Upon the indorsement and delivery of these receipts the relation of bailor and bailee between the bank and the warehouse was created. So we have a case, according to the allegations of the petition of the bank, in which the warehouseman issued receipts for cotton stored with it, to be delivered upon its order, which receipts were indorsed by the warehouseman to the bank, and which entitled the bank to have this cotton delivered to it upon presentation of these receipts. Instead of keeping the cotton so stored and delivering it to the bank under its receipts, the warehouse company, in some way unknown to the bank, wrongfully and without the consent of the bank disposed of this property and converted the proceeds to its own use. In these circumstances the warehouse company failed to perform the obligation assumed by it as a warehouseman to deliver this cotton to the bank as the holder of these receipts; and for breach of this obligation the surety on its bond became liable thereunder to the bank for the value of the cotton so stored, or for so much of such value as was necessary to discharge the debt of the warehouse company to the

bank, secured by the deposit of these receipts. So we are of the opinion that the petition of the bank set forth a cause of action, and that the trial judge did not err in overruling the demurrer of the surety company.

On the trial the surety company offered evidence tending to show some irregularity in the issuing of these receipts, from which an inference might be drawn that they did not represent cotton actually owned by the warehouse company and deposited in its warehouse at the time of their issuance. There was no evidence tending to show that the bank knew of such irregularity, and no circumstances were proved which would put the bank on inquiry as to the actual storage of the cotton in the warehouse of this company. The court rejected the evidence so offered, and in the motion for new trial exception is taken to this ruling. So we are presented with the question whether the surety in this case could submit proof tending to show that the cotton represented by these receipts was not actually in storage in the warehouse of the issuer at the time the receipts were issued and pledged by the issuer to the bank, in the absence of the proof of circumstances which would charge the bank with knowledge of the fact, or put it upon inquiry as to the actual existence and storage of the cotton in the warehouse. Where warehouse receipts are issued in due course of business for the express purpose of being pledged as security to obtain money, and if in such receipts it is recited that the warehouseman owns and has in storage the cotton for which the receipts are issued, the bank, as pledgee of the receipts, after having advanced money in good faith on them, is entitled to stand on their terms as importing a genuine business transaction of the nature described in them. Though in fact the goods represented by the receipts were not in existence and were not in storage in the warehouse of the issuer of the receipts, and the recitals therein were utterly false, nevertheless these recitals would have the same effect in protecting such bona fide pledgee as if the goods were in existence and were in storage in the warehouse of the issuer of the receipts. "He who creates a symbol and leaves it a symbol is bound by it only in its symbolic character; but he who creates a symbol and aids in raising it to a security is bound by it both as a symbol and a security." *Planters' Rice-Mill Co.* v. *Merchants National Bank,* 78 *Ga.* 574 (3 S. E. 327). The warehouseman

is estopped, as against a bona fide transferee, from denying that he received the goods for which his warehouse receipts were given, although they were fraudulently issued by its agent, because no goods in fact existed or had been received for storage, the agent being clothed in fact with power to issue the receipts. If the warehouse company gave to itself a false credit with a bank by pledging receipts for cotton stored, the company will not be suffered to contradict the statement made in its receipts, so as to injure a party who has been misled by it. *Planters' Rice-Mill Co.* v. *Merchants' Bk.,* supra; *American Nat. Bk.* v. *Georgia R. Co.,* 96 *Ga.* 665 (23 S. E. 898, 51 Am. St. R. 155); *Citizens & So. Bk.* v. *Union Warehouse &c. Co.,* 157 *Ga.* 434, 449 (122 S. E. 327). An obligation rests upon a warehouse company not to issue receipts for goods in which it recites that it owns such goods, and that it will deliver the same to the holder of such receipts, when in fact such goods are not in existence or are not stored with it. The purpose of the bond is to protect persons dealing with the warehouseman, in the usual and customary method of business, and against fraudulent and unlawful acts of the warehouseman in issuing receipts for goods in which he recites their storage, when the recital is false. For a breach of this obligation the surety upon the bond becomes liable to the pledgee of the receipts for the falsity of such statement. So the trial judge did not err in rejecting the evidence offered for the purpose of showing that these receipts were fraudulently issued by the warehouse company; and in the absence of facts showing any other defense than those dealt with herein, the judge did not err in directing a verdict for the bank. *Judgment affirmed. All the Justices concur.*