SOUTHERN COTTON OIL COMPANY *v.* MERCHANTS AND CITIZENS BANK *et al.*

No. 9928.   September 21, 1934.

*W. B. Smith* and *Hal M. Smith,* for plaintiff.

*W. S. Mann,* for defendants.

Atkinson, J.   The Southern Cotton Oil Company, a corporation engaged in the business of (a) selling fertilizers to farmers, (b) operating a cotton gin, and (c) conducting a warehouse "licensed, bonded, and operated under the United States warehouse act" for storage of cotton and other farm products, sold certain fertilizers to W. A. Hill to make a crop in 1931, and received therefor a promissory note executed on March 24, 1931, secured by a bill of sale of the crops; which afterwards was duly recorded.   Subsequently a quantity of cotton, the product of the crop, was ginned at the ginnery and packed into bales which were stored by the oil company in its warehouse, for which regular warehouse receipts were issued to Hill.   The company retained possession of the actual cotton, claiming separate special liens for the several unsatisfied debts owed for fertilizers, ginning, and storage.   The warehouse receipts were delivered by Hill to the Merchants and Citizens Bank. The oil company brought suit against the bank and Hill, seeking (a) to require the bank to bring the warehouse receipts into court and assert its legal claims to them; (b) for injunction to prevent the bank from transferring the receipts and from interfering with the plaintiff's possession of the cotton; (c) to establish the plaintiff's several special liens against the cotton; (e) to cause the cotton to be sold, and payment of the secured debts to be made from the proceeds of sale.   After interlocutory hearing, on demurrer and answer and after introduction of evidence, the judge sustained the grounds of general demurrer to the petition and dismissed the ac-

tion. The bill of exceptions assigns error on this judgment. Other facts will sufficiently appear hereinafter.

■ The ruling announced in the first headnote does not require elaboration.

■ The petition alleged, in the first instance, valid liens in favor of the plaintiff for the price of the fertilizers used in making the crop, and for the cost of ginning and storage charges; but it remains to be seen if the petition did not go too far and allege postponement of such liens by subsequent issue by the plaintiff to Hill, the owner of the cotton, of warehouse receipts which went into the hands of the bank. Where cotton is actually stored in a public licensed and bonded warehouse operating under the United States warehouse act (U. S. C. A. title 7, § 241), the warehouseman may issue warehouse receipts therefor to the owner of the cotton, embodying terms as specified in section 18 of said act. U. S. C. A. § 260. Under the Georgia laws such receipts are ordinarily negotiable. Civil Code, §§ 2913, 2914; *Maryland Casualty Co.* v. *Washington Loan &c. Co.*, 167 *Ga.* 354 (145 S. E. 761, 61 A. L. R. 323); *Orvis Co.* v. *Mobley*, 171 *Ga.* 906, 913 (156 S. E. 894). In the instant case the petition, considered on demurrer, having alleged that the petitioner as warehouseman operating under the United States warehouse act issued "regular warehouse receipts" to Hill as owner of the cotton, and failing to set forth the language of the receipts or allege facts showing that the receipts were non-negotiable, the petition, construed most strongly against the pleader, will be considered as alleging that the receipts were negotiable. See *Maryland Casualty Co.* v. *Johnson Co.*, supra. It was alleged that the warehouse receipts were held by the bank "under some claim or pretended claim it has against Hill and against said cotton," but "as petitioner does not have the possession of said warehouse receipts, it is not able to allege what notations were made thereon." It was also alleged: "And at the time said cotton was ginned and stored in said warehouse said instrument [petitioner's bill of sale] had neither been satisfied nor canceled, but was, at the time same was stored in said warehouse, still covered and incumbered by said recorded lien; and when said cotton was so stored in petitioner's warehouse and receipts issued therefor to W. A. Hill without the payment or cancellation of said previous lien, the said warehouse receipts so issued carried with them no greater title than

W. A. Hill had when said cotton was stored in said warehouse . . ; that the record of its lien as above mentioned imparted constructive notice, and further that notice was given to said O. F. McRae, president and cashier of said defendant bank, by A. W. Waller, agent of plaintiff, at the time said fertilizer was sold and many times since before said defendant bank accepted said receipts from W. A. Hill, and that plaintiff at first declined to extend credit to W. A. Hill, and said defendant bank, through its agent O. F. McRae, knew of this fact and approached said Waller with reference to selling Hill fertilizer, pleading with him to sell said Hill fertilizer, saying he was a good farmer and the crop mortgage would be sufficient security to take care of said debt. Petitioner further alleges that the actual notice of petitioner's claim of lien was given to O. F. McRae orally in conversation with the said Waller many times in the office of said defendant bank. Plaintiff further amends said suit by alleging that its agent in charge of its warehouse was one of limited authority, and his sole duty during all the time this cotton in question was being ginned and stored in said warehouse by said W. A. Hill was to receive cotton offered for storage by all parties, and to issue its regular receipts therefor, and he had no authority to do anything else in connection with said cotton, and had no authority to see to the collection of said notes or to alter a contract previously made on behalf of said Southern Cotton Oil Company, but simply to receive the goods and to issue regular receipts therefor, and was not charged with any duty of enforcing plaintiff's lien against said property."

These allegations are insufficient to charge the bank with notice that the plaintiff held unsatisfied liens on the cotton after the plaintiff issued the warehouse receipts to Hill and at the time they were received by the bank, or to charge that the plaintiff was not a bona fide holder of the receipts for value. It is to be presumed that the plaintiff would not have issued the warehouse receipts to Hill with no notations entered thereon of its claims of lien if such claims had not been paid. If the receipts contained notations of the existence of such liens, or such liens had not been satisfied, it was incumbent on the plaintiff, in the circumstances, to allege such facts. In the amendment to the petition numerous attacks were made upon "the alleged mortgage or bill of sale held" by the bank, "and under which it claims a lien on said crops." Not all such attacks

will be stated, but among them is the charge that the paper is void for the reasons: (a) it was given solely to secure a pre-existing debt; (b) it "does not specifically recite that it was given for advances to aid in the making, planting, or gathering said crop;" (c) it does not sufficiently describe the property; (d) the crop was not "in esse at the date of said paper." These allegations constitute an attack upon some mortgage or bill of sale held by the bank which is not substantially set forth, and do not deny the existence of a debt by Hill to the bank or the legality of the transaction in which the bank became holder of the warehouse receipts. The bank might have been a bona fide holder for value of the warehouse receipts, independently of any claim of lien upon the cotton in virtue of any mortgage or bill of sale. In the amendment to the petition it was alleged that the mortgage or bill of sale hereinbefore referred to as being held by the bank covered also other specified property upon which the plaintiff did not have a lien, and that the bank should be required to proceed against such other property until the plaintiff has been paid for the fertilizers used in making the crop. This relates to enforcement of a "mortgage or bill of sale," and raises no question as to the bank's right to proceed as holder of the warehouse receipts. Finally, under proper construction the petition on its face alleges that though the plaintiff originally held valid liens upon the cotton, it subsequently issued negotiable warehouse receipts therefor to the owner of the cotton, without notations of such liens being made on the receipts, and that the bank became holder of the receipts; but there was failure to charge that the bank took the warehouse receipts with notice of the plaintiff's claim of lien, or that the receipts were not acquired by the bank bona fide and for value. The petition thus failed to allege a cause of action, and the court did not err in dismissing the action on general demurrer.

*Judgment affirmed. All the Justices concur.*